Javier Ramirez SANTACRUZ, Appellant,

v.

The STATE of Texas, Appellee.

No. 07–97–0184–CR.

Court of Appeals of Texas,
Amarillo.

Feb. 25, 1998.

Rehearing Overruled May 11, 1998.

Ronald T. Spriggs, Law Offices of Ronald T. Spriggs, Amarillo, for appellant.

John Mann, Matthew C. Martindale, Gray County District Attorneys, Pampa, for appellee.

Before DODSON, QUINN and REAVIS, JJ.

QUINN, Justice.

Javier Ramirez Santacruz appeals his conviction for possessing a controlled substance. His three points of error involve whether 1) the trial court erred in refusing to grant him a new trial because the jurors purportedly received evidence after retiring to deliberate over punishment and misconducted themselves and 2) the evidence was insufficient to sustain his conviction. We affirm.

### *Points of Error One and Two*

Since points one and two involve the court's refusal to grant a new trial, they will be considered together. According to appellant, he was entitled to new trial because 1) the jury received evidence during deliberation, which evidence pertained to the effect parole may have on any prison sentence and 2) various jurors failed to disclose that they knew appellant during voir dire. We overrule both points.

### A. Standard of Review

Whether to grant new trial lies within the court's discretion. *State v. Gonzalez*, 855 S.W.2d 692, 696 (Tex.Crim.App.1993). We may interfere with the decision only if the court abuses its discretion. *Id.; Cantu v. State*, 842 S.W.2d 667, 682 (Tex.Crim.App. 1992) (en banc), *cert. denied*, 509 U.S. 926, 113 S.Ct. 3046, 125 L.Ed.2d 731 (1993). The latter occurs when the court acts arbitrarily or without reference to any guiding rules or principles. *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex.Crim.App.1991) (en banc). Implicit within the standard lies an element of deference. That is, the court's decision must fall outside the zone of reasonable disagreement. *Cantu v. State*, 842 S.W.2d at 682; *Montgomery v. State*, 810 S.W.2d at 391. For instance, if the circumstances could be reasonably interpreted several ways, given conflicting or ambiguous evidence, and the court selects one of those interpretations, then its action constitutes a legitimate exercise of discretion. *See Keady v. State*, 687 S.W.2d 757, 759 (Tex.Crim.App.1985) (stating that where there is conflicting evidence, there can be no abuse of discretion in overruling a motion for new trial).

### B. Application of Standard to Jury's Consideration of Parole Law

It has been held that the discussion of parole by a jury during its deliberations could constitute misconduct or the improper receipt of evidence and warrant new trial. *Id.; Rogers v. State*, 815 S.W.2d 811, 814 (Tex.App.—Amarillo 1991, no pet.). However, five criteria must be met before it will. The movant must show that there was 1) a misstatement of the law, 2) asserted as a fact, 3) by one professing to know the law, 4) which was relied upon by other jurors, 5) who, for that reason, changed their vote to a harsher punishment. *Id.* Moreover, these criteria are not satisfied by proof of a

> general discussion of the parole law without any juror professing to know the law or expressing an opinion about parole, coupled with admonishments that it was not to be considered and the lack of definitive proof that any juror voted for a harsher punishment because of the discussion.

*Rogers v. State*, 815 S.W.2d at 814.

Here, the record clearly shows that the jurors discussed parole law. They testified, during the hearing on the motion for new trial, that they talked about how much time appellant might actually serve on a hypothetical sentence. Nevertheless, only one witness came close to suggesting that she may have been swayed by the discussion. Yet she was equivocal at best, stating at one time that the discussion swayed her and on another that it did not. Moreover, another juror testified to admonishing her colleagues that parole should not be considered because they did not know how appellant would act if he were assessed a prison term. As for the juror who calculated potential minimum sentences based upon the trial court's charge on parole, he was a juvenile probation officer.[1] But, he admitted that 1) there was a difference between juvenile and adult parole, 2) he lacked knowledge about the adult parole laws, and 3) he never represented that he was "an expert in adult parole laws." These circumstances are not unlike those described in *Rogers* as insufficient to warrant new trial. The jurors admonished themselves about not considering parole. No one professed to know about the parole laws. And, the evidence of the discussion influencing someone's vote was far from clear.

In effect, the testimony proffered to the trial court raised issues of fact regarding

---

1. The jurors were informed via the charge that: Under the law applicable in this case, if the Defendant is sentenced to a term of imprisonment, he will not become eligible for parole until the actual time served plus any good conduct time earned equals one-fourth of the sentence imposed. Eligibility for parole does not guarantee that parole will be granted. It cannot accurately be predicted how the parole law and good conduct time might be applied to this defendant if he is sentenced to a term of imprisonment, because the application of these laws will depend on decisions made by prison and parole authorities.
You may consider the existence of the parole law and good conduct time. However, you are not to consider the extent to which good conduct time may be awarded to or forfeited by this particular defendant. You are not to consider the manner in which the parole law may be applied to this particular defendant.

satisfaction of the five criteria mentioned above. Under these circumstances, we are unable to conclude that the trial court's decision to deny new trial fell outside the zone of reasonable disagreement or constituted an abuse of discretion. *See Keady v. State,* 687 S.W.2d at 759 (stating that there is no abuse of discretion in denying new trial when there is conflicting evidence).

### C. Application of Standard to Failure to Disclose Information During Voir Dire

The voir dire process is designed to insure, as much as possible, that an intelligent, alert, disinterested, impartial, and truthful jury will perform the duty assigned to it. *Armstrong v. State,* 897 S.W.2d 361, 363 (Tex.Crim.App.1995) (en banc). When a venire member withholds material information during voir dire, he denies the parties an opportunity to intelligently exercise their challenges and obtain an impartial jury. *Id.; Jones v. State,* 596 S.W.2d 134, 136 (Tex. Crim.App. [Panel Op.] 1980). However, to be material, the information withheld must be of a type suggesting potential for bias or prejudice. *Decker v. State,* 717 S.W.2d 903, 907 (Tex.Crim.App.1983) (en banc). As stated in *Von January v. State,* 576 S.W.2d 43 (Tex.Crim.App. [Panel Op.] 1978), "[w]hen *a partial, biased, or prejudiced juror is selected* without fault or lack of diligence on the part of defense counsel, who has acted in good faith upon the answers given to him on voir dire not knowing them to be inaccurate, good grounds exists for a new trial." *Id.* at 45 (emphasis added). In other words, it is not the mere failure to disclose information which warrants new trial. Instead, it is the chance that a *biased* individual came to serve via silence or deception which the law seeks to ameliorate. Thus, the evidence allegedly withheld must suggest bias. *See Henson v. State,* 650 S.W.2d 432, 434–35 (Tex.App.— Houston [14th Dist.] 1982), *affirmed on other grounds,* 683 S.W.2d 702 (Tex.Crim.App. 1984) (concluding that the appellant must show some evidence of the juror's bias before

becoming entitled to a new trial); *accord Herrera v. State,* 665 S.W.2d 497, 501 (Tex. App.—Amarillo 1983, pet. ref'd) (concluding that new trial was required since the information withheld was of the ilk which rendered the juror's impartiality suspect).

At bar, appellant's counsel asked, during voir dire, if any potential juror knew or "knew of" appellant. According to appellant, jurors Nolte and Huck did not respond despite knowing him. As to the former, appellant fails to direct us to any evidence which supports his allegation that Ms. Nolte knew appellant. He simply claims as much in his brief. However, allegations in a brief are not evidence. Additionally, our own review of the record uncovered nothing which indicates that Nolte knew or "knew of" appellant and failed to disclose same.[2]

As for Ms. Huck, she testified, post verdict, about knowing that appellant played softball many years earlier. Yet, she had never met or socialized with him. Nor did she recognize him "right off." Instead, her experience was limited to knowing of him. We find nothing in this suggestive of bias. Indeed, if working with a pivotal witness is not sufficiently indicative of bias, as held in *Decker,* then knowing that the appellant once played a sport years ago is hardly so.

### Point of Error Three

In his third and final point, appellant argues that the evidence was not sufficient to sustain his conviction; that is, the State allegedly failed to prove he knowingly or intentionally possessed a controlled substance. While not specifying whether he refers to legal or factual sufficiency, we address both and overrule the point.

### A. Standard of review

In determining whether a verdict enjoys the support of legally sufficient evidence, we ask if, after reviewing the evidence in the light most favorable to the prosecution,

---

**2.** In his brief, appellant states that his sister and Nolte worked together. Consequently, "[w]orking for [a]ppellant's sister was very likely to bias Ms. Nolte about [a]ppellant." We disagree. To jump from the former statement of purported fact to the latter conclusion would require us to presume that co-workers know of each other's family. Needless to say, that is hardly a fact of which we can take judicial knowledge. Nor does logic compel such a conclusion. Knowing a defendant's kin does not mean you know or know of the defendant.

any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *King v. State*, 895 S.W.2d 701, 703 (Tex.Crim.App.1995) (en banc). If the answer is yes, then the evidence underlying the conviction is legally sufficient.

■ However, in assessing the verdict's factual sufficiency, we put aside the requirement that the evidence be viewed through a prism of light favorable to the State. Instead, our task is to peruse the entire record and decide whether the overwhelming weight of the evidence so contradicts the verdict as to make that verdict clearly wrong or unjust. *Clewis v. State*, 922 S.W.2d 126, 129 (Tex. Crim.App.1996) (en banc). In defining when the scale so tilts, the *Clewis* court invoked such nebulously descriptive terms as "shocks the conscience" and "clearly demonstrates bias." *Id.* at 135.

■ Finally, and regardless of which standard is utilized, it remains axiomatic that we defer to the jury's resolution of factual disputes. That is, the power to reasonably infer facts from the evidence, to resolve credibility issues, and to determine who to believe or disbelieve is not ours but the jury's. *Depauw v. State*, 658 S.W.2d 628, 633–34 (Tex. App.—Amarillo 1983, pet. ref'd).

*B. Application of Standard to the Evidence and Verdict*

■ When one is charged with possessing a controlled substance, it is incumbent upon the State to prove two things. First, it must show that the accused exercised actual care, control, or management over the contraband. *King v. State*, 895 S.W.2d at 703. Second, the State must also illustrate that the appellant knew the nature of the substance he controlled. *Id.*

At bar, it is undisputed that the police officers found 44.47 grams of methamphetamine (a controlled substance) in a plastic margarine bowl. So too is it undisputed that appellant threw the bowl into his yard after removing it from the grasp of his girlfriend and a police officer. According to the record, appellant and his girlfriend were engaged in a fight over whether she could retake possession of their child. The baby had been left in appellant's care for several days, and the reason why he did not want the child to leave with its mother was that he knew the latter was taking drugs. The fight spilled into appellant's yard by the time the police arrived.

Once there, the officers quelled the dispute and offered to drive the girlfriend and child elsewhere. At that point, the girlfriend went into appellant's house and exited carrying the baby and a box marked "baby formula." As the woman approached the squad car, appellant directed one of the officers to check the contents of the box. The officer did, and that instigated a tugging match between appellant's girlfriend and the officer. So, according to appellant, he stepped in to protect his child from any harm which may have resulted from the fracas. Yet, instead of securing possession of the baby, he reached into the box, grabbed the margarine bowl containing the controlled substance, threw it over the fence into his yard, where roamed several Rottweiler dogs, and told the police that they could not retrieve it. At trial, appellant acknowledged that the drugs belonged to his girlfriend, though he denied knowing that they were in the bowl at the time. Instead, he said that he thought it contained jewelry which his girlfriend had returned to him earlier.

In appellant's grabbing the bowl, throwing it into his yard, and forbidding the officers from retrieving it, a jury could have rationally found beyond reasonable doubt that he exercised care, control, and management over the bowl and contraband therein. So too could such a jury have rationally found beyond reasonable doubt that appellant knew of the bowl's true contents upon hearing evidence 1) that he knew his girlfriend was taking drugs, 2) that the two had just fought about her use of drugs immediately before the police arrived, 3) that appellant himself directed the officers to inspect the box which held the bowl which held the contraband, 4) that despite his alleged concerns over the baby's safety during the ensuing scuffle between the officer and his girlfriend, appellant grabbed the bowl and nothing else, 5) that appellant barred the officer from retrieving the bowl that held the drugs, 6) that appellant admitted the drugs belonged to his girl-

friend, and 7) that appellant never mentioned to the officers that he thought that the bowl contained jewelry. Furthermore, the evidence contradicting such conclusions does raise questions of fact, but, it is not so weighty as to render the conclusions clearly wrong or unjust. Thus, the verdict is supported by both legally and factually sufficient evidence.

Finding no reversible error, we affirm the judgment.