NOS. 07-08-0233-CR, 07-08-0234-CR, 07-08-0235-CR,
07-08-0236-CR, 07-08-0237-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A
Â 
NOVEMBER 24, 2009
______________________________

JOSEPH WENDELL HUME, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE
_________________________________

FROM THE 181ST DISTRICT COURT OF RANDALL COUNTY;

NO. 19,597-B, 19,600-B, 19,601-B, 19,611-B, 19,619-B;

 HONORABLE JOHN BOARD, JUDGE
_______________________________


Before CAMPBELL and HANCOCK and PIRTLE, JJ.
MEMORANDUM OPINION
Â Â Â Â Â Â Â Â Â Â Appellant, Joseph Wendell Hume, appeals his consecutive life sentences for eight
offenses. We affirm.
Background 
Â Â Â Â Â Â Â Â Â Â On January 6, 2008, Lenora Braddock was shopping at Kohlâs in Amarillo, Texas,
with her two daughters. As the three women returned and entered their vehicle, appellant
entered into the back seat of the vehicle. Appellant pulled a gun and robbed the three
women. Later on that same day, appellant approached another woman in a Walmart
parking lot and displayed a gun. Appellant had the woman drive him out of the parking
lot to a secluded area where he proceeded to rob and rape her. During the second
assault, appellant asked the victim to put on lipstick, place a cigarette in her mouth to wet
it, and to then give him the cigarette. Because of appellantâs unusual request for a wet
cigarette with lipstick, the police took a second look at a 2006 case in which two women
were robbed at the Westgate mall parking lot. In that Westgate mall case, the robber also
asked the women to provide him a wet cigarette with lipstick. Appellant was charged with
six indictments, two of which contained multiple counts.
Â Â Â Â Â Â Â Â Â Â On May 22, 2008, appellant pled guilty to two counts of aggravated sexual assault
resulting from the Walmart incident and requested that the judge assess punishment. After
hearing punishment evidence from the victims in all three incidents, the trial judge
sentenced appellant to life imprisonment in the Institutional Division of the Texas
Department of Criminal Justice (ID-TDCJ), each sentence to be served concurrently. After
a break in the proceedings, appellant then pled guilty to four additional indictments with the
State dismissing one indictment. Those four indictments included five charges of
aggravated robbery and one additional charge of aggravated sexual assault. In separate
proceedings, the trial court proceeded to sentence appellant in each of those four
indictments to life imprisonment in ID-TDCJ, the sentence for each indictment to be served
consecutively.


 
Â Â Â Â Â Â Â Â Â Â On May 29, appellant filed notice of appeal and, on June 20, filed a motion for new
trial. In his motion for new trial, appellant contends that his trial counsel did not heed his
request for psychiatric help. At a hearing held on July 31 in regard to his motion for new
trial, appellant raised the issues of competency to stand trial as well as voluntariness of the
plea due to his lack of understanding of his eligibility for probation from a jury. At the
conclusion of the hearing on the motion for new trial, the trial court denied appellantâs
motion for a new trial. Appellant now appeals.
Â Â Â Â Â Â Â Â Â Â On appeal, appellant contends that (1) the trial court erred in denying his motion for
new trial because the plea was involuntarily entered by appellant who did not understand
probation eligibility nor the possibility of concurrent sentences from a jury; (2) the plea was
involuntarily entered by appellant who did not understand probation eligibility nor the
possibility of concurrent sentences from a jury; and (3) ineffective assistance of counsel. 
We affirm.
Denial of motion for new trial
Â Â Â Â Â Â Â Â Â Â To preserve an issue for appellate review, an appellant must make a timely and
specific objection at trial, and obtain a ruling from the trial court. See Tex.R.App.P. 33.1. 
When a defendant has no opportunity to object to a trial court's action until after it takes
place, a defendant may still preserve error by raising the objection in a timely filed motion
for new trial. See Issa v. State, 826 S.W.2d 159, 160-61 (Tex. Crim. App. 1992). The
granting or denying of a motion for new trial is within the discretion of the trial court. See
State v. Gonzalez, 855 S.W.2d 692, 696 (Tex.Crim.App.1993). A trial court abuses its
discretion when its action or decision is not within the zone of reasonable disagreement. 
See Montgomery v. State, 810 S.W.2d 372, 391(Tex.Crim.App.1991) (op. on rehâg). A trial
judge's ruling is presumed to be correct. See Lee v. State, 167 Tex.Crim. 608, 322 S.W.2d
260, 262 (1958). Implicit within the standard of review lies an element of deference to the
determinations of the trial court. See Santacruz v. State, 963 S.W.2d 194, 196 (Tex.App.â
Amarillo 1998, pet. refâd). When material issues of fact are raised by conflicting evidence
at a hearing on a motion for new trial, the trial court does not abuse its discretion in
overruling the motion. See Keady v. State, 687 S.W.2d 757, 759 (Tex.Crim.App. 1985). 
Â Â Â Â Â Â Â Â Â Â Initially, we note that appellant did not raise the issue of concurrent/consecutive
sentencing either during sentencing nor at the hearing on the motion for new trial. 
Therefore, appellant has waived this issue. Tex. R. App. P. 33.1. On the issue of whether
trial counsel adequately explained the possibility of probation from a jury, we find that the
testimony of trial counsel during the hearing on the motion for new trial is sufficient to
support the trial courtâs ruling. Appellant contends that trial counsel never raised the
possibility of probation from the jury. However, upon recall, trial counsel explained that,
because the State intended to proceed forward to trial on each indictment, her opinion was
that a jury was not likely to recommend probation in five separate trials. Even if trial
counselâs testimony raised, at best, a conflict in evidence as to whether trial counsel
conveyed the information to appellant that probation was an option with a jury, the trial
court did not abuse its discretion in overruling the motion. See Keady, 687 S.W.2d at 759.
We defer to the determinations of the trial court. See Santacruz, 963 S.W.2d at 196. We
overrule appellantâs first issue.
Voluntariness of plea
Â Â Â Â Â Â Â Â Â Â When considering the voluntariness of a guilty plea, we must examine the entire
record. See Martinez v. State, 981 S.W.2d 195, 197 (Tex. Crim. App. 1998) (per curiam). 
A finding that a defendant was duly admonished creates a prima facie showing that a guilty
plea was entered knowingly and voluntarily. Id. at 197. A defendant may still raise the
claim that his plea was not voluntary; however, the burden shifts to the defendant to
demonstrate that he did not fully understand the consequences of his plea such that he
suffered harm. Id.
Â Â Â Â Â Â Â Â Â Â On appeal, appellant contends that his pleas were involuntary because he did not
believe he was eligible for probation from a jury and further believed that sentencing from
a jury meant automatic consecutive sentencing. However, the clerkâs record in each of
these cases contains a felony plea memorandum containing appellantâs signature
documenting that appellant was indeed admonished accordingly. See Tex. Code Crim.
Proc. Ann. art. 26.13 (Vernon Supp. 2009).


 Since the felony plea memorandum creates
a prima facie showing of voluntariness, see Martinez, 981 S.W.2d at 197, the burden is
upon appellant to demonstrate he did not fully understand the consequences of his plea. 
Again, the issue of consecutive sentences was not raised during the hearing on the motion
for new trial nor at the original plea. Hence, the record before us contains no evidence of
appellantâs alleged misunderstanding regarding consecutive sentencing. We conclude that
appellant has not met his burden and that the record does not support appellantâs
contention that his attorney led him to believe that jury sentencing meant automatic
consecutive sentencing. Â 
Â Â Â Â Â Â Â Â Â Â Next, appellant contends that he believed that a jury could not give him probation
and that his only option for receiving probation was to go to the trial judge for punishment. 
From the testimony during the hearing on the motion for new trial, trial counsel initially
stated that âI had also already provided him with copies of the statutes that showed he
wasnât eligible for probation.â However, when asked to clarify her statement, trial counsel
stated

If we went to successive trials â once he had one trial doesnât mean heâs
going to get probation on the other trials, or that you would be able to give
him probation. Probation is always a possibility. I repeatedly told him that
I did not feel like a jury trial in Randall County would give him probation on
any case that was tried. I had prepared applications [for probation] to
provide him. . . . it was just that once we tried one, even if he had gotten
probation on one of them, it doesnât mean if we went to trial on the next one
â and my understanding from the district attorneyâs office was that they
would do a jury trial on each one of the offenses. So itâs not that he wouldnât
have necessarily been eligible, but that I didnât feel that a jury would give him
probation, that if we did one it doesnât mean he would get it on all the others.

Â 
When directly asked if appellant knew that there was that slight chance that he could get
probation from a jury, trial counsel answered, âI am â I â yes.â Further on cross
examination, trial counsel was asked, âDid you tell him he was not eligible for probation
from a jury,â trial counsel answered, âNo.â During that same hearing, appellant testified
and stated, âI asked her [trial counsel] what would be the best solution if possible, and she
said the judge would probably be the best solution, because the jury would stack the
charges and all â probably would not give you probation.â However, when asked later, âDid
you ever, at any time, think that a jury could give you probation in these cases,â appellant
answered, âNo.â
Â Â Â Â Â Â Â Â Â Â In addition to the testimony offered at the hearing on the motion for new trial, we
also have a transcript from a meeting between appellant, trial counsel and the district
attorney. In an unusual step, and against trial counselâs advice, appellant demanded and
received a meeting with the district attorney and an assistant district attorney. At the
meeting, the State reiterated its offer to appellant that, in exchange for a plea of guilty, that
the State would recommend life sentences but would ask that the sentences not be
stacked. At that meeting, several terms related to probation were used including stacked,
concurrent, and deferred adjudication. Finally, we have the clerkâs record of the plea
hearing where it appears that appellant received properly administered admonishments. 
Â Â Â Â Â Â Â Â Â Â From an examination of the entire record, it would appear that the only evidence
supporting appellantâs contention is his self-serving statement at the hearing on the motion
for a new trial. Appellant was aware of, at minimum, the possibility of probation. 
Considering that appellant was insistent that he be given probation, trial counsel would
have investigated the different possibilities of gaining probation for her client. In support
of that proposition, we have trial counselâs statement that she had never told him that he
couldnât get probation from a jury, but only that there was a slight chance. We also have
appellantâs statement that trial counsel told him that a jury âprobably would not give you
probation.â We also have a transcript of a meeting requested by appellant where probation
is the main topic of discussion. Throughout the meeting, appellant and the attorneys
discuss several options such as jury trials, plea bargains, and an open plea before the
judge. Eventually, appellant decides on an open plea because of the understanding that
the judge could give him deferred adjudication. At that plea, appellant signed a felony plea
memorandum containing the admonishment according to art. 26.13 as well as received the
same admonishments from the trial judge verbally. Considering the prima facie showing
that a guilty plea was entered knowingly and voluntarily, we conclude that appellant has
not met his burden to demonstrate that his plea was involuntarily entered because he
believed that a jury could not give him probation. We overrule appellantâs second issue.
Ineffective assistance of counsel
Â Â Â Â Â Â Â Â Â Â The right to counsel affords an accused an attorney reasonably likely to render and
rendering reasonably effective assistance. See Stafford v. State, 813 S.W.2d 503, 506
(Tex. Crim. App. 1991). In analyzing claims of ineffective assistance of counsel, we apply
the two-part test announced in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052,
80 L. Ed. 2d 674 (1984). Ex parte Ellis, 233 S.W.3d 324, 330 (Tex. Crim. App. 2007).
Under this framework, appellant must prove by a preponderance of the evidence that: (1)
his counsel's performance was deficient; and (2) there is a reasonable probabilityâone
sufficient to undermine confidence in the resultâthat the outcome would have been
different but for his counsel's deficient performance. Id.
Â Â Â Â Â Â Â Â Â Â To establish deficient performance, appellant must show that counsel was not acting
as a reasonably competent attorney, and his advice was not within the range of
competence demanded of attorneys in criminal cases. Id. Appellant must overcome the
strong presumption that counsel's conduct fell within the wide range of reasonable
professional assistance. Id. Therefore, appellant must overcome the presumption that,
under the circumstances, the challenged action might be considered sound trial strategy.
Id. The reasonableness of an attorney's performance is judged according to the prevailing
professional norms and includes an examination of all the facts and circumstances
involved in a case. Id. We must be highly deferential to trial counsel and avoid the
deleterious effects of hindsight. Id.
Â Â Â Â Â Â Â Â Â Â Under the second prong of the Strickland analysis, appellant must establish that the
constitutionally deficient performance prejudiced his defense--that is, he must show that
there is a reasonable probability that, but for counsel's unprofessional errors, the result of
the proceeding would have been different. Id. A reasonable probability is a probability
sufficient to undermine confidence in the outcome. Id. at 330-31. When making this
determination, any constitutionally deficient acts or omissions will be considered in light of
the totality of the evidence before the judge or jury. Id. at 331.
Â Â Â Â Â Â Â Â Â Â Under the first prong, it appears that trial counsel has performed according to the
professional norms. Since appellant was facing 3g offenses, see art. 42.12 Â§ 3g, appellant
was not eligible for judge ordered community supervision after conviction or a plea of guilty. 
 Thus, appellantâs only options were to receive probation from a jury at the conclusion of
five jury trials, or to receive deferred adjudications from the trial judge. See art. 42.12 Â§ 4,
5. Although testimony at the hearing on the motion for new trial was confusing at times,
it is apparent that appellantâs trial counsel was discounting the possibility of appellant
receiving probation from a jury multiple times, not that probation was not available from a
jury. Additionally, appellant and his counsel had met with the district attorney and an
assistant district attorney to discuss a probation offer prior to the date appellant pled guilty. 
At that time, appellantâs trial counsel explained that, if appellant went to the trial judge for
sentencing, the judge was bound within the punishment range for the offenses as set out
by the legislature. However, within that range, trial counsel explained that the judge would
have the ability and discretion to sentence appellant to anything within that range. Also,
at that time, the issue of concurrent sentences came up only briefly. The mention of
concurrent sentences was when the district attorney reiterated the offer previously given
to appellant, that being six life sentences to run concurrently. Given the fact that appellant
was facing six indictments and that the State has declared its intention to prosecute each
before a jury unless appellant pled guilty, appellant has not overcome the strong
presumption that counsel's conduct fell within the wide range of reasonable professional
assistance. Ex parte Ellis, 233 S.W.3d at 330. Because appellant has failed to establish
deficient performance by counsel, we will forego any analysis under the second prong of
Strickland. Tex. R. App. P. 47.1. We overrule appellantâs last issue. 
Conclusion
Â Â Â Â Â Â Â Â Â Â For the foregoing reasons, we affirm. Â 
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Mackey K. Hancock

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Justice

Do not publish.



al;
 color:black;
 mso-bidi-language:EN-US;
 font-style:italic;}
p.MsoIntenseQuote, li.MsoIntenseQuote, div.MsoIntenseQuote
 {mso-style-priority:30;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-link:"Intense Quote Char";
 mso-style-next:Normal;
 margin-top:10.0pt;
 margin-right:.65in;
 margin-bottom:14.0pt;
 margin-left:.65in;
 line-height:115%;
 mso-pagination:widow-orphan;
 border:none;
 mso-border-bottom-alt:solid #4F81BD .5pt;
 padding:0in;
 mso-padding-alt:0in 0in 4.0pt 0in;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 color:#4F81BD;
 mso-bidi-language:EN-US;
 font-weight:bold;
 font-style:italic;}
span.MsoSubtleEmphasis
 {mso-style-priority:19;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 color:gray;
 font-style:italic;}
span.MsoIntenseEmphasis
 {mso-style-priority:21;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 color:#4F81BD;
 font-weight:bold;
 font-style:italic;}
span.MsoSubtleReference
 {mso-style-priority:31;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 font-variant:small-caps;
 color:#C0504D;
 text-decoration:underline;
 text-underline:single;}
span.MsoIntenseReference
 {mso-style-priority:32;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 font-variant:small-caps;
 color:#C0504D;
 letter-spacing:.25pt;
 font-weight:bold;
 text-decoration:underline;
 text-underline:single;}
span.MsoBookTitle
 {mso-style-priority:33;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 font-variant:small-caps;
 letter-spacing:.25pt;
 font-weight:bold;}
p.MsoTocHeading, li.MsoTocHeading, div.MsoTocHeading
 {mso-style-noshow:yes;
 mso-style-priority:39;
 mso-style-qformat:yes;
 mso-style-parent:"Heading 1";
 mso-style-next:Normal;
 margin-top:24.0pt;
 margin-right:0in;
 margin-bottom:0in;
 margin-left:0in;
 margin-bottom:.0001pt;
 line-height:115%;
 mso-pagination:widow-orphan lines-together;
 page-break-after:avoid;
 font-size:14.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#365F91;
 mso-bidi-language:EN-US;
 font-weight:bold;}
span.Heading1Char
 {mso-style-name:"Heading 1 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 1";
 mso-ansi-font-size:14.0pt;
 mso-bidi-font-size:14.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#365F91;
 font-weight:bold;}
span.Heading2Char
 {mso-style-name:"Heading 2 Char";
 mso-style-noshow:yes;
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 2";
 mso-ansi-font-size:13.0pt;
 mso-bidi-font-size:13.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 font-weight:bold;}
span.Heading3Char
 {mso-style-name:"Heading 3 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 3";
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 font-weight:bold;}
span.Heading4Char
 {mso-style-name:"Heading 4 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 4";
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 font-weight:bold;
 font-style:italic;}
span.Heading5Char
 {mso-style-name:"Heading 5 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 5";
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#243F60;}
span.Heading6Char
 {mso-style-name:"Heading 6 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 6";
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#243F60;
 font-style:italic;}
span.Heading7Char
 {mso-style-name:"Heading 7 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 7";
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#404040;
 font-style:italic;}
span.Heading8Char
 {mso-style-name:"Heading 8 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 8";
 mso-ansi-font-size:10.0pt;
 mso-bidi-font-size:10.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;}
span.Heading9Char
 {mso-style-name:"Heading 9 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 9";
 mso-ansi-font-size:10.0pt;
 mso-bidi-font-size:10.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#404040;
 font-style:italic;}
span.TitleChar
 {mso-style-name:"Title Char";
 mso-style-priority:10;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Title;
 mso-ansi-font-size:26.0pt;
 mso-bidi-font-size:26.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#17365D;
 letter-spacing:.25pt;
 mso-font-kerning:14.0pt;}
span.SubtitleChar
 {mso-style-name:"Subtitle Char";
 mso-style-priority:11;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Subtitle;
 mso-ansi-font-size:12.0pt;
 mso-bidi-font-size:12.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 letter-spacing:.75pt;
 font-style:italic;}
span.QuoteChar
 {mso-style-name:"Quote Char";
 mso-style-priority:29;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Quote;
 color:black;
 font-style:italic;}
span.IntenseQuoteChar
 {mso-style-name:"Intense Quote Char";
 mso-style-priority:30;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Intense Quote";
 color:#4F81BD;
 font-weight:bold;
 font-style:italic;}
p.NewDocument, li.NewDocument, div.NewDocument
 {mso-style-name:"New Document";
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-next:Normal;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:0in;
 line-height:115%;
 mso-pagination:widow-orphan;
 font-size:12.0pt;
 mso-bidi-font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
span.BalloonTextChar
 {mso-style-name:"Balloon Text Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Balloon Text";
 mso-ansi-font-size:8.0pt;
 mso-bidi-font-size:8.0pt;
 font-family:"Tahoma","sans-serif";
 mso-ascii-font-family:Tahoma;
 mso-hansi-font-family:Tahoma;
 mso-bidi-font-family:Tahoma;
 mso-bidi-language:EN-US;}
span.HeaderChar
 {mso-style-name:"Header Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Header;
 mso-ansi-font-size:11.0pt;
 mso-bidi-font-size:11.0pt;
 mso-bidi-language:EN-US;}
span.FooterChar
 {mso-style-name:"Footer Char";
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Footer;
 mso-ansi-font-size:11.0pt;
 mso-bidi-font-size:11.0pt;
 mso-bidi-language:EN-US;}
span.SpellE
 {mso-style-name:"";
 mso-spl-e:yes;}
span.GramE
 {mso-style-name:"";
 mso-gram-e:yes;}
.MsoChpDefault
 {mso-style-type:export-only;
 mso-default-props:yes;
 font-size:10.0pt;
 mso-ansi-font-size:10.0pt;
 mso-bidi-font-size:10.0pt;
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:Arial;
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:Arial;}
 /* Page Definitions */
 @page
 {mso-footnote-separator:url("07-08-0090.cr%20opinion2_files/header.htm") fs;
 mso-footnote-continuation-separator:url("07-08-0090.cr%20opinion2_files/header.htm") fcs;
 mso-endnote-separator:url("07-08-0090.cr%20opinion2_files/header.htm") es;
 mso-endnote-continuation-separator:url("07-08-0090.cr%20opinion2_files/header.htm") ecs;}
@page Section1
 {size:8.5in 11.0in;
 margin:1.0in 1.0in 1.0in 1.0in;
 mso-header-margin:.5in;
 mso-footer-margin:.5in;
 mso-page-numbers:1;
 mso-title-page:yes;
 mso-footer:url("07-08-0090.cr%20opinion2_files/header.htm") f1;
 mso-paper-source:0;}
div.Section1
 {page:Section1;}
@page Section2
 {size:8.5in 11.0in;
 margin:1.0in 1.0in 1.0in 1.0in;
 mso-header-margin:.5in;
 mso-footer-margin:.5in;
 mso-title-page:yes;
 mso-footer:url("07-08-0090.cr%20opinion2_files/header.htm") f2;
 mso-paper-source:0;}
div.Section2
 {page:Section2;}
-->








NO. 07-08-00090-CR

Â 

IN THE COURT OF APPEALS

Â 

FOR THE
SEVENTH DISTRICT OF TEXAS

Â 

AT
AMARILLO

Â 

PANEL D

Â 



APRIL
27, 2010

Â 



Â 

BEAU JACKSON FUQUA, APPELLANT

Â 

v.

Â 

THE STATE OF TEXAS, APPELLEE 



Â 



Â 

 FROM THE 100TH DISTRICT COURT OF CARSON
COUNTY;

Â 

NO. 3594; HONORABLE STUART MESSER, JUDGE



Â 



Â 

Before QUINN,
C.J., and CAMPBELL and PIRTLE, JJ.

Â 

Â 

MEMORANDUM OPINION

Â 

Â 

Appellant Beau
Jackson Fuqua appeals the trial court=s judgment
adjudicating him guilty of the offense of aggravated sexual assault of a child
and sentencing him to twenty-nine years in the Institutional Division of the
Texas Department of Criminal Justice.Â 
Through one point of error, appellant contends the trial court abused
its discretion by considering evidence outside the record in reaching its
sentencing decision.Â  We disagree, and
affirm.

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  

Background

Appellant plead
guilty to aggravated sexual assault of a child,[1]
and the trial court entered an order deferring adjudication of his guilt and
placing him on community supervision.Â 
Appellant=s deferred adjudication community
supervision was conditioned on his compliance with specified terms and
conditions.Â  The State later filed its
First Amended Motion to Adjudicate Guilt of Defendant, alleging appellant
violated twelve terms and conditions of his community supervision.Â  The allegations included appellantÂs
commission of three additional offenses.Â 


At the hearing on
the State=s motion, appellant entered pleas of Atrue@ to each of the
State=s
allegations.Â  Thereafter, the State
presented the testimony of appellant=s probation
officer and a police officer.Â  

Appellant=s probation
officer testified that appellant was noncompliant with the terms of his
probation and opined appellant was not a good candidate for continued
probation.Â  On cross-examination, the
officer agreed that many of appellant=s violations were
related in some way to his use of controlled or intoxicating substances.Â  On re-direct examination, the officer agreed
that appellant also had failed to register as a sex offender
as required by law and had been in a household where young children were
present, in violation of conditions of his community supervision.

The police officer
testified to a traffic stop of appellant, during which appellant exhibited
signs of intoxication, admitted he had consumed beer,
and was shown by intoxilyzer to have a blood alcohol
concentration of 0.136.Â  

Appellant testified on his own behalf.Â  With regard to his underlying offense,
appellant admitted he engaged in consensual sexual activity with an underage
girl, more than three years younger than himself, at a party where they were
drinking and taking illicit drugs.Â 
Appellant testified he had a problem with drugs he was unable to
control. He asked the court for another chance to get his life straightened out
and to allow him to receive treatment for his problems. Appellant=s father testified
in support of his son, describing his own problems with methamphetamine.Â  He further testified appellant should not be
sent to prison but instead should get the help he needs.Â  AppellantÂs fatherÂs testimony contains the
statement, AHe=s [appellant] a
good baby.Â  He=s been a good baby
all of his life until that little heifer came into his life.Â  And dang it, y=all know how she was.Â  I
mean B .Â The victim of
appellantÂs assault was twelve years old at the time of the offense.

During the prosecutorÂs closing argument, he mentioned the
Âlittle heiferÂ statement, pointing to it as a part of appellantÂs pattern of
blaming others for his conduct.

As he announced appellantÂs sentence, the trial judge
commented on appellantÂs failure to take advantage of the opportunity afforded
him by the courtÂs earlier deferral of his adjudication and the community
supervision program.Â  The court also took
note of appellantÂs fatherÂs Âlittle heiferÂ remark, stating: AI=ve had a 12-year-old
daughter.Â  And I don=t feel nearly as
hardBI mean, as kindly
towards you as I do that 12-year-old girl.Â 
Her description from a witness in this very chair where she was compared
to an animal rings in my ears, and I see my daughter there as a 12-year-old
girl.@

The court rejected appellantÂs argument for a sentence
focusing on drug treatment and, as noted, sentenced appellant to twenty-nine
years in the Institutional Division.Â Â Â  

Analysis

On appeal,
appellant contends the trial judgeÂs comment referring to the judgeÂs own
daughter shows he considered evidence outside of the record when determining
appellantÂs sentence, and shows the courtÂs Âown biasÂ entered into his
sentencing decision.Â  

A trial judge is
given wide latitude to determine the appropriate sentence in a given case.Â  Jackson v. State,
680 S.W.2d 809, 814 (Tex.Crim.App. 1984); Harvey
v. State, 173 S.W.3d 841, 850 (Tex.App.BTexarkana
2005, no pet.).Â  Generally, a
sentence will not be disturbed as long as it is within the proper range of
punishment.Â  Jackson, 680 S.W.2d at 814.Â  A
trial judge=s decision on punishment is reviewed under
an abuse of discretion standard.Â  Id.
Â A trial court abuses its discretion when the decision lies outside the
zone of reasonable disagreement. Â Apolinar v. State, 155 S.W.3d 184, 186 (Tex.Crim.App.
2005).

We initially note
the trial courtÂs sentencing decision reflects no abuse of discretion. In a
revocation proceeding, the trial judge is the sole trier
of the facts, and determines the credibility of the witnesses and the weight to
be given to the testimony.Â  Lee v. State, 952 S.W.2d 894, 897 (Tex.App.BDallas
1997, no pet.).Â  The trial court was
free to accept the probation officerÂs testimony that appellant was a poor
candidate for continued probation, and was free to find that conclusion
reinforced by appellantÂs admitted violations of the conditions of his
probation, including three additional violations of law.Â  The sentence the court imposed is within the
proper range of punishment.Â  See Tex.
Penal Code Ann. ' 12.32 (Vernon 2003) (providing a
punishment range of imprisonment for life or any term of not more than 99 years
or less than 5 years); Jackson, 680 S.W.2d at 814 (noting discretion
given trial court in sentencing). 

A neutral and
detached judge is a fundamental component of the fair trial to which appellant
was entitled.Â  Dockstader v. State,
233 S.W.3d 98, 108 (Tex.App.BHouston
[14th Dist.] 2007, pet. ref=d), citing
Markowitz v. Markowitz, 118 S.W.3d 82, 86 (Tex.App.BHouston
[14th Dist. 2003, pet. denied).Â 
In the absence of a clear showing to the contrary, a reviewing court
will presume that the trial court was neutral and detached.Â  Jaenicke v. State, 109 S.W.3d 793, 796-97 (Tex.App.BHouston
[1st Dist.] 2003, pet. ref=d).

To reverse a
judgment on the ground of improper conduct or comments of the judge, we must
find (1) that judicial impropriety was in fact committed, and
(2) probable prejudice to the complaining party.Â  Dockstader, 233 S.W.3d at 108.Â  The scope of our review is the entire
record.Â  Id.Â Â Â Â  

Judicial remarks
during the course of trial that are critical or disapproving of, or even
hostile to, counsel, the parties, or their cases, ordinarily do not support a
bias or partiality challenge.Â  Id.Â  See also Garcia v. State, 246 S.W.3d 121,
147 (Tex.App.BSan
Antonio 2007, pet. ref=d) (noting
same for recusal purposes).Â  From our
review of the entire record, it is clear that, by stating he felt more ÂkindlyÂ
toward the twelve-year-old victim of appellantÂs assault than for appellant,
the trial court merely was expressing his disapproval of appellantÂs fatherÂs
Âlittle heiferÂ remark and its inference that the twelve-year-old was to blame
for appellantÂs conduct.Â  The judgeÂs
disapproving statement does not support an assertion he was biased against
appellant or impartial in his decision-making.Â 
Nor does the judgeÂs expressed mental comparison between the victim and
his recollection of his own daughter at that age constitute ÂevidenceÂ
improperly considered in the sentencing decision. 

We overrule
appellant=s point of error and affirm the trial
court=s judgment.

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  James
T. Campbell

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Justice

Â 

Do not
publish.Â  

Â Â Â Â Â Â Â Â Â Â Â  








Â 











[1]Â 
See Tex. Penal Code Ann. ' 22.021(a)(2)(B) (Vernon 2007).Â 
This is a first degree felony punishable by imprisonment for life or a
term of not less than five years or more than 99 years.Â  Tex. Penal Code Ann. '
12.32 (Vernon 2003).