

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-12-00444-CR

EDWARD DUGAN BARNETT, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 121st District Court
Terry County, Texas
Trial Court No. 6154, Honorable Cecil Puryear, Presiding

December 12, 2013

## OPINION

Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.

Appellant, Edward Dugan Barnett, appeals the trial court's denial of appellant's motion for new trial following appellant's conviction for the offense of aggravated sexual assault of a child.[1]  Appellant's sole issue is that the trial court erred in denying his motion for new trial.  We will affirm the judgment of the trial court.

---

[1] See TEX. PENAL CODE ANN. § 22.021(a)(1)(B) (West Supp. 2013).

Factual and Procedural Background[2]

Appellant was indicted for the offense of aggravated sexual assault of a child. After trial, a jury found appellant guilty and sentenced him to 30 years incarceration in the Institutional Division of the Texas Department of Criminal Justice.

At the conclusion of appellant's trial, the bailiff of the trial court approached appellant's defense counsel with concerns about certain aspects of the trial. Specifically, the bailiff informed appellant's counsel of an issue with the law enforcement background of one of the State's witnesses, and of possible juror misconduct on the part of one of the jurors in the case. Appellant investigated the issues raised by the bailiff. Subsequently, appellant filed a motion for new trial alleging juror misconduct and that the State failed to disclose impeachment evidence regarding one of its witnesses.

To establish his claim of juror misconduct, appellant offered evidence that Wilton Brassfield, one of the jurors in appellant's trial, failed to disclose material information concerning his relationship with one of the State's witnesses, and had an unauthorized conversation during jury deliberations. Specifically, appellant offered evidence during the new trial hearing that Brassfield and one of the State's witnesses are ex-brothers-in-law, and that Brassfield had a conversation with Brownfield Chief Deputy Mike McClure while the jury was deliberating.

To establish his claim that the State withheld material impeachment evidence, appellant offered evidence that one of the State's witnesses, lead investigator Darrell

_____

[2] Because appellant's sole issue challenges the trial court's denial of his motion for new trial, we will limit our recitation of the factual and procedural background to those facts and that procedural history relevant to appellant's issue.

Williams, gave false testimony concerning his background in law enforcement. Specifically, appellant offered evidence that Williams had been employed by the Kermit Police Department approximately 12 years before being employed by the Brownfield Police Department, even though Williams testified that he had been a certified peace officer only since May of 2006. Appellant also offered evidence that the reason that Williams's employment with the Kermit Police Department was terminated was due to a bargain that Williams reached as part of an investigation into an allegation that Williams had committed the offense of aggravated sexual assault.

At the conclusion of the hearing, the trial court denied appellant's motion. Appellant timely appealed. The sole issue in appellant's appeal is that the trial court erred in denying his motion for new trial, but he presents argument relating to both his allegation that Brassfield committed juror misconduct, and that the State failed to disclose material impeachment evidence concerning Williams.

Standard of Review

We review the granting or denial of a motion for new trial under an abuse of discretion standard. *Preciado v. State*, 346 S.W.3d 123, 124 (Tex. App.—Amarillo 2011, no pet.) (citing *Charles v. State*, 146 S.W.3d 204, 208 (Tex. Crim. App. 2004)). As the reviewing court, we do not substitute our judgment for that of the trial court, rather we decide whether the trial court's decision was arbitrary and unreasonable. *Id.* Further, we must view the evidence in the light most favorable to the trial court's ruling and presume all reasonable factual findings that could have been made against the losing party were made. *Id.* Accordingly, a trial court abuses its discretion by denying a

3

motion for new trial only when no reasonable view of the record could support the trial court's ruling. *Id.*

Juror Brassfield

Appellant contends that he is entitled to a new trial because Brassfield failed to disclose material information during voir dire, and had an unauthorized conversation during jury deliberations.

<u>Failure to Disclose Material Information</u>

The voir dire process is designed to insure, as much as possible, that an intelligent, alert, disinterested, impartial, and truthful jury will perform the duty assigned to it. *Armstrong v. State*, 897 S.W.2d 361, 363 (Tex. Crim. App. 1995) (per curiam); *Santacruz v. State*, 963 S.W.2d 194, 197 (Tex. App.—Amarillo 1998, pet. ref'd). When a juror withholds material information in the voir dire process, the parties are denied the opportunity to intelligently exercise their challenges and obtain a disinterested and impartial jury. *Armstrong*, 897 S.W.2d at 363; *Santacruz*, 963 S.W.2d at 197. To be material, the information withheld must be of a type suggesting potential for bias or prejudice. *Santacruz*, 963 S.W.2d at 197 (citing *Decker v. State*, 717 S.W.2d 903, 907 (Tex. Crim. App. 1983) (op. on reh'g)). "When a partial, biased, or prejudiced juror is selected without fault or lack of diligence on the part of defense counsel, who has acted in good faith upon the answers given to him on voir dire not knowing them to be inaccurate, good ground exists for a new trial." *Von January v. State*, 576 S.W.2d 43, 45 (Tex. Crim. App. 1978). However, it is incumbent upon defense counsel to ask questions calculated to bring out that information which might indicate a juror's inability

4

to be impartial and truthful. *Armstrong*, 897 S.W.2d at 363-64. Unless defense counsel asks such questions, the material information which the juror fails to disclose is not "withheld." *Id.* at 364.

In the present case, appellant contends that Brassfield withheld material information during voir dire when he failed to disclose his past relationship with the State's witness, Williams. Appellant offered the testimony of Kevin Overstreet, a private investigator assisting in appellant's defense, that public records reflect that Brassfield and Williams had been brothers-in-law.[3] Appellant did not call Brassfield or Williams as witnesses. As such, no evidence was offered by appellant as to the nature of this relationship. At best, Overstreet's testimony created an inference that Brassfield knew Williams. However, this testimony falls far short of establishing that Brassfield withheld information during voir dire that suggests potential bias or prejudice. *See Santacruz*, 963 S.W.2d at 197.

Additionally, the voir dire record reflects that the State introduced all of its witnesses to the venire panel and asked the panelists if anyone knew any of the State's witnesses. The panel's response caused the State's attorney to state, "Okay. A whole bunch of you." The State's attorney then asked those panelists that had indicated that they knew any of the State's witnesses whether their relationship with the State's witnesses would prevent them from being fair and impartial. The State's attorney then individually questioned those that indicated that they would not be able to set aside their relationship with the witnesses and be fair and impartial. Brassfield was not individually questioned. During appellant's voir dire, appellant did not ask any specific questions

---

[3] At the time of trial, Brassfield was divorced from Williams's sister-in-law.

5

relating to the panelists' relationships with any of the witnesses.  Consequently, a fair reading of the voir dire record reflects that Brassfield might have been one of the "whole bunch of you" that indicated that he knew one of the State's witnesses,[4] but that he would be able to set that relationship aside and be fair and impartial.  Because appellant failed to ask questions calculated to bring out information indicating that Brassfield might not be able to be impartial and truthful, we cannot say that Brassfield withheld material information.[5]  *See id.*

Unauthorized Conversation

For a defendant to have a fair trial, the jury must decide the case on the basis of the evidence presented at trial.  *Robinson v. State*, 851 S.W.2d 216, 230 (Tex. Crim. App. 1991).  As such, when jurors converse with an unauthorized person about a case, injury to the defendant is presumed and a new trial may be warranted.  *Quinn v. State*, 958 S.W.2d 395, 401 (Tex. Crim. App. 1997); *Robinson*, 851 S.W.2d at 230; *see also* TEX. CODE CRIM. PROC. ANN. art. 36.22 (West 2006); TEX. R. APP. P. 21.3(f).  If the

---

[4] We acknowledge that Overstreet testified, at the new trial hearing, that his notes reflect that Brassfield did not indicate that he knew any of the State's witnesses.  However, Overstreet's notes were not admitted into evidence at the new trial hearing and nothing in the voir dire record establishes whether Brassfield indicated that he knew any of the State's witnesses.  Regardless, even were we to assume that Brassfield did not indicate that he knew Williams, appellant's new trial evidence fails to establish that Brassfield withheld material information.

[5] Appellant also contends that Brassfield withheld his relationship with Terry County Chief Deputy Mike McClure.  The trial record reflects that McClure was not a witness for the State.  In fact, no questions were asked of the panel regarding any relationship between the panelists and Terry County law enforcement.  Consequently, we cannot conclude that Brassfield withheld material information about which appellant never inquired.  *See Armstrong*, 897 S.W.2d at 363-64.  In fact, the only question specifically propounded to Brassfield during voir dire asked whether he would be able to consider the testimony of law enforcement witnesses and non-law enforcement witnesses equally, without giving law enforcement witnesses an inherent credibility advantage.  Brassfield responded that the witnesses would "[s]tart off equal."

presumption of harm arises, the State has the burden to rebut the presumption by showing no injury or prejudice to the accused. *Klapesky v. State*, 256 S.W.3d 442, 452 (Tex. App.—Austin 2008, pet. ref'd) (mem. op., not designated for publication); *see also Quinn*, 958 S.W.2d at 401. However, the defendant bears the initial burden of showing that a conversation about the specific case on trial occurred between a juror and an unauthorized person. *Chambliss v. State*, 647 S.W.2d 257, 265-66 (Tex. Crim. App. 1983); *Klapesky*, 256 S.W.3d at 452. The defendant does not carry this burden if he does not show what the unauthorized conversation was about. *Klapesky*, 256 S.W.3d at 452 (citing *Stults v. State*, 23 S.W.3d 198, 207 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd)).

In the present case, appellant contends that Brassfield had an unauthorized conversation with McClure after the jury had been released for the evening during jury deliberations. Evidence of this contact was presented by testimony of Overstreet and John Lopez, another private investigator assisting in appellant's defense. However, the testimony of Lopez related that Brassfield came into contact with McClure because McClure was watching Brassfield's child for him. As above, appellant did not call Brassfield or Williams as witnesses.[6] No evidence was offered that Brassfield and McClure discussed this case. In fact, no evidence was offered regarding what they discussed or, even, if they had a discussion at all. As such, appellant failed to meet his initial burden of showing that Brassfield and McClure had a conversation about the

---

[6] The State did attach affidavits of Brassfield and McClure to its response to appellant's motion for new trial. However, neither the State nor appellant offered these affidavits into evidence during the new trial hearing. Thus, these affidavits are not evidence before us. *See Stephenson v. State*, 494 S.W.2d 900, 909-10 (Tex. Crim. App. 1973). However, while these affidavits show that Brassfield and McClure had a brief conversation during Brassfield's jury service, both affidavits state that appellant's trial was not discussed.

present case. *See Chambliss*, 647 S.W.2d at 265-66; *Klapesky*, 256 S.W.3d at 452. As a result, no presumption of harm arose. *See Quinn*, 958 S.W.2d at 401; *Robinson*, 851 S.W.2d at 230.

Officer Williams

Appellant contends that he is entitled to a new trial because the State failed to disclose impeachment information relating to Officer Williams. Specifically, appellant offered evidence during the new trial hearing that Williams had been investigated for the offense of aggravated sexual assault while employed with the Kermit Police Department, and had agreed to terminate his employment and never again seek employment in law enforcement in exchange for non-prosecution of the investigated offense.

A defendant is denied his right to due process when his "conviction [is] obtained through use of false evidence, known to be such by representatives of the State . . . ." *Napue v. Illinois*, 360 U.S. 264, 269, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959); *see Ex parte Ghahremani*, 332 S.W.3d 470, 477 (Tex. Crim. App. 2011). A due process violation may arise not only through false evidence specifically elicited by the State, but also by the State's failure to correct testimony it knows to be false. *Ex parte Ghahremani*, 332 S.W.3d at 477. Even if the prosecutor does not know that the evidence is false, it is enough that he or she should have recognized the misleading nature of the evidence. *Id.* The knowing use of false testimony violates due process when there is a "reasonable likelihood" that the false testimony affected the outcome of

the trial. *Id.* at 478. In other words, the false testimony must have been material. *See id.*

We will assume, without deciding, that the State knew that Williams testified falsely when he testified that he had been a certified peace officer since May 1, 2006.[7] Because, under our assumption, the State knowingly used false testimony, appellant's due process rights were affected if there was a reasonable likelihood that Williams's false testimony affected the outcome of the trial. A review of Williams's testimony at trial reveals that Williams scheduled a Sexual Assault Nurse Examiner (SANE) examination and a Child Advocacy Center (CAC) interview of the alleged victim, compiled "papers" and prepared a report, interviewed three persons, and sought an interview with appellant that was discontinued when appellant invoked his right to have counsel present during questioning. No documentary evidence was offered or admitted through Williams's testimony. In fact, Williams did not testify about any facts relevant to the charges against appellant. During cross-examination, appellant's questioning of Williams was focused on discrediting the SANE examination and the CAC interview by contending that law enforcement should have interviewed the alleged victim. Considering the entirety of Williams's testimony, appellant's inability to impeach Williams with his false testimony cannot be said to have had a reasonable likelihood of affecting the outcome of appellant's trial.

---

[7] Evidence offered by appellant at the new trial hearing established that Williams had been certified as a peace officer in October of 1994, when he began working as a reserve police officer for the Kermit Police Department.

Interest of Justice

Finally, appellant contends that the trial court erred in denying appellant a new trial in the interest of justice. While appellant's argument in support of this contention relates solely to Williams's testimony, we will consider it as contending that the cumulative effect of all of appellant's bases for new trial is sufficient to constitute a miscarriage of justice.

A trial court may, in its discretion, grant a motion for new trial in the interest of justice. *State v. Trevino*, 930 S.W.2d 713, 716 (Tex. App.—Corpus Christi 1996, pet. ref'd) (citing *State v. Gonzalez*, 855 S.W.2d 692, 694 (Tex. Crim. App. 1993)). The discretion to order a new trial when a trial court concludes that a trial has resulted in a miscarriage of justice is an important part of our judicial system. *See Gonzalez*, 855 S.W.2d at 694. In fact, when a trial judge determines that justice has not been done, he has not only the power but the obligation to order a new trial. *Trevino*, 930 S.W.2d at 716.

In the present case, appellant has failed to establish that the trial resulted in a miscarriage of justice. As discussed above, appellant has failed to establish that the trial court erred in its implied rulings on any of his bases for new trial. As such, we cannot conclude that the cumulative effect of these alleged errors resulted in a trial that was a miscarriage of justice.

Conclusion

We overrule appellant's sole issue and affirm the judgment of the trial court. *See*

TEX. R. APP. P. 43.2(a).

Mackey K. Hancock
Justice

Publish.