Joseph Edward ANTHONY, Appellant

v.

The STATE of Texas, Appellee

No. 06-15-00233-CR

Court of Appeals of Texas,
Texarkana.

Date Submitted: March 14, 2016

Date Decided: June 22, 2016

Clay Harrison, Assistant District Attorney, Sulphur Springs, TX, for Appellee.

Charles E. Perry, Attorney at Law, Commerce, TX, for Appellant.

Before Morriss, C.J., Moseley and Burgess, JJ.

## OPINION

Opinion by Justice Burgess

Joseph Edward Anthony pled guilty to intentionally or knowingly possessing less than one gram of methamphetamine. Pursuant to his plea bargain agreement, Anthony was placed on three years' deferred adjudication community supervision. Although the terms and conditions of his community supervision required him to remain drug free, the State alleged that Anthony tested positive for methamphetamine and admitted drug use to his community supervision officer. As a result, the State moved to revoke Anthony's community supervision and to adjudicate his guilt. After Anthony pled true to the allegations in the State's motion, the trial court found him guilty of the underlying offense, sentenced him to twenty-four months in state jail, and ordered him to pay $500.00 in court-appointed attorney fees.

In his sole issue on appeal, Anthony argues that the trial court erred in failing to make a sua sponte inquiry into his competence at the adjudication and sentencing hearings. We disagree and therefore affirm the trial court's ruling. However, we modify the trial court's judgment to delete the imposition of attorney fees for court-appointed counsel because the record demonstrates that Anthony was indigent and that the trial court made no determination that he was able to pay these fees.

## I. Informal Inquiry into Anthony's Competence Was Not Required

### A. Standard of Review

A fundamental principle of our criminal justice system is "that a person whose mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense may not be subjected to a trial." *Drope v. Missouri*, 420 U.S. 162, 171, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975). Due process prohibits the conviction of a mentally incompetent person. *Turner v. State*, 422 S.W.3d 676, 688 (Tex. Crim.App.2013); *Corley v. State*, 582 S.W.2d 815, 818 (Tex.Crim.App.1979) (citing *Bishop v. United States*, 350 U.S. 961, 76 S.Ct. 440, 100 L.Ed. 835 (1956)). These principles apply to adjudication proceedings. "An assertion that a defendant was not competent at the time of the adjudication hearing ... raises a preliminary due-process issue that must be resolved before the adjudication process may begin." *Durgan v. State*, 240 S.W.3d 875, 878 (Tex. Crim.App.2007) (citing *Cooper v. Oklahoma*, 517 U.S. 348, 354, 116 S.Ct. 1373, 134 L.Ed.2d 498 (1996)).

"A defendant is presumed competent to stand trial and shall be found competent to stand trial unless proved incompetent by a

preponderance of the evidence." Tex. Code Crim. Proc. Ann. art. 46B.003(b) (West 2006). "A person is incompetent to stand trial if the person does not have: (1) sufficient present ability to consult with the person's lawyer with a reasonable degree of rational understanding; or (2) a rational as well as factual understanding of the proceedings against the person." Tex. Code Crim. Proc. Ann. art. 46B.003(a) (West 2006).

■ "These legislative criteria for competency contemplate a defendant who is at least minimally able to interact with his trial counsel in a 'reasonable and rational' way (even if they do not necessarily agree) in formulating decisions how most effectively to pursue his defense." *Turner*, 422 S.W.3d at 689–90. "Under our current statutory scheme, any 'suggestion' of incompetency to stand trial calls for an 'informal inquiry' to determine whether evidence exists to justify a formal competency trial." *Id.* at 691–92 (footnote omitted); *see* Tex. Code Crim. Proc. Ann. art. 46B.004(c), (c–1) (West Supp.2015).[1]

A suggestion of incompetency may be based on the trial court's observations related to the defendant's capacity to

(A) rationally understand the charges against the defendant and the potential consequences of the pending criminal proceedings;

(B) disclose to counsel pertinent facts, events, and states of mind;

(C) engage in a reasoned choice of legal strategies and options;

(D) understand the adversarial nature of criminal proceedings;

(E) exhibit appropriate courtroom behavior; and

(F) testify,

Tex. Code Crim. Proc. Ann. art. 46B.024(1) (West Supp.2015), or "on any other indication that the defendant is incompetent [to stand trial] within the meaning of Article 46B.003," Tex. Code Crim. Proc. Ann.art. 46B.004(c–1).[2]

■ We review a trial court's failure to conduct a competency inquiry under an abuse-of-discretion standard. *Moore v. State*, 999 S.W.2d 385, 393 (Tex.Crim.App. 1999). A trial court abuses its discretion if its decision is arbitrary or unreasonable. *Lewis v. State*, 911 S.W.2d 1, 7 (Tex.Crim. App.1995). "In making this determination, a trial court must consider only that evidence tending to show incompetency, 'putting aside all competing indications of competency, to find whether there is some evidence, a quantity more than none or a scintilla, that rationally may lead to a conclusion of incompetency.'" *Turner*, 422 S.W.3d at 692 (quoting *Ex parte LaHood*, 401 S.W.3d 45, 52–53 (Tex.Crim.App. 2013)). "If so, then 'evidence exists ·to support a finding of incompetency,' and the

---

1. "The question therefore becomes whether, in light of what became known to the trial court by the conclusion of this informal inquiry, it should have conducted a formal competency trial." *Turner*, 422 S.W.3d at 692. "The answer depends upon whether 'some evidence from any source' had arisen by that time 'that would support a finding that [the appellant] may be incompetent to stand trial.'" *Id.* (quoting Tex. Code Crim. Proc. Ann. art. 46B.004(c)).

2. Additional considerations not at issue here include (1) the defendant's current indications of mental illness, (2) the defendant's personal history of mental illness, (3) whether any condition has lasted or is expected to last continuously for at least one year, (4) the degree of impairment resulting from the mental illness, (5) the specific impact of the mental illness on the defendant's capacity to rationally engage with counsel, and (6) whether the defendant takes psychoactive or other medications and their effect on the defendant's appearance, demeanor, and ability to participate in the proceedings. Tex. Code Crim. Proc. Ann. art. 46B.024(2)–(5) (West Supp.2015).

statutory scheme requires the trial court to conduct a formal competency trial." *Id.* at 692–93 (quoting TEX. CODE CRIM. PROC. ANN. art. 46B.005(a) (West 2006)).

### B. Analysis

Anthony complains that there was "no direct inquiry of . . . himself or his counsel with respect to [his] competency." He argues that the trial court's failure to make an informal inquiry was erroneous since there was evidence suggesting his incompetence, including (1) that he was not sure when he was arrested, (2) that he "only knew he did not have to plead true to the State's allegations until he was admonished by the court," (3) that he said, "I want to go *his* (indicating) route" when asked if he wanted to plead true, (4) that he "went into a rambling and mixed up talk about what he had done and what he thought the court should do" at his punishment hearing, and (5) that the "court had to admonish Anthony for not putting his thumb print on the judgment." According to Anthony, these actions demonstrated that his "thought process w[as] flawed and mixed up."

At the adjudication hearing, Anthony informed the trial court that he had received the State's motion to adjudicate guilt, that he had turned himself in, and that he was appearing in court for the first time since his arrest. Although he initially could not pinpoint the date of his arrest, he informed the trial court later that he had turned himself in on October 26, 2015, in Red River County, was transferred to Hopkins County, and had "been locked up 30 days."

Anthony indicated that he understood the trial court's admonishments, including that he had the right to an adversarial hearing. Anthony also indicated that he had spoken to his counsel about his options. When asked whether he wished to go forward with a plea of true even though he had the option to plead not true, Anthony responded, "I want to go his (indicat-

ing) route. The way me and you talked about." Anthony was referring to conversations that he had had with his counsel. Counsel responded, "The answer to that question, then, is yes," and Anthony confirmed that he wished to plead true to the State's allegations. Counsel informed the trial court that he felt "professionally comfortable with Mr. Anthony proceeding" with his plea. Anthony then told the trial court that he was pleading true because he tested positive for drugs while on deferred adjudication community supervision.

In an effort to convince the trial court to continue him on community supervision, Anthony testified at the sentencing hearing that he "got back into church right before [he] turned [him]self in," that he had quit using drugs, that he wanted to stay clean, and that he was willing to attend a drug rehabilitation program. He told the trial court that he respected his community supervision officer and that he had a good support system to help him successfully complete community supervision if given another chance. The record demonstrates that the statement characterizing Anthony's testimony as a "rambling and mixed up talk" is meritless. Also, during cross-examination, Anthony coherently discussed his criminal history, the terms of his prior sentences, and his efforts and failures to comply with the terms of community supervision.

After the trial court informed Anthony that it was not going to continue him on community supervision, Anthony refused to provide his thumbprint on the trial court's judgment. He informed the court that this was due to his belief that his counsel had not represented him to the best of his ability. The trial court informed Anthony that he was required to provide his thumbprint and that he had the right to appeal. Anthony then stated, "Well, there's a lot of things I don't under-

stand, Judge," but the trial court interrupted him by explaining that he was not going to retry the case. At that point, Anthony became compliant, provided his thumbprint, and answered the trial court's questions with respect to the amount of time he had already served in jail. He also informed the trial court that he intended to appeal the judgment.

After reviewing the record, we disagree that it contained the five alleged suggestions of incompetence set forth in Anthony's appellate brief. Instead, we find that nothing suggested that Anthony was incompetent at the time of the adjudication or sentencing hearing.[3] Thus, we find that the trial court's duty to conduct an informal inquiry on a suggestion of incompetence was not triggered. Consequently, we overrule Anthony's sole point on appeal.

## II. Modification of the Judgment

Under Article 26.05(g) of the Texas Code of Criminal Procedure, a trial court has the authority to order the reimbursement of court-appointed attorney fees only if "the judge determines that a defendant has financial resources that enable the defendant to offset in part or in whole the costs of the legal services provided ..., including any expenses and costs." TEX. CODE CRIM. PROC. ANN. art. 26.05(g) (West Supp.2015). "[T]he defendant's financial resources and ability to pay are explicit critical elements in the trial court's determination of the propriety of ordering reimbursement of costs and fees" of legal services provided. *Armstrong v. State*, 340

S.W.3d 759, 765–66 (Tex.Crim.App.2011) (quoting *Mayer v. State*, 309 S.W.3d 552, 556 (Tex.Crim.App.2010)). Since there was no finding that Anthony was able to pay them, the assessment of attorney fees was erroneous.[4] *See Cates v. State*, 402 S.W.3d 250, 252 (Tex.Crim.App.2013); *see also Mayer v. State*, 309 S.W.3d 552 (Tex. Crim.App.2010); *Martin v. State*, 405 S.W.3d 944, 946–47 (Tex.App.—Texarkana 2013, no pet.).

This Court has the power to correct and modify the judgment of the trial court for accuracy when the necessary data and information are part of the record. *See* TEX. R. APP. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27 (Tex.Crim.App. 1993); *Asberry v. State*, 813 S.W.2d 526, 529 (Tex.App.—Dallas 1991, pet. ref'd). "The authority of an appellate court to reform incorrect judgments is not dependent upon the request of any party, nor does it turn on the question of whether a party has or has not objected in the trial court." *Asberry*, 813 S.W.2d at 529–30.

## III. Conclusion

We modify the trial court's judgment by deleting the assessment of attorney fees and affirm the trial court's judgment, as modified.

---

**3.** The record demonstrated that Anthony rationally understood the charges against him, the potential consequences of the adjudication proceeding, and the adversarial nature of criminal proceedings. It also demonstrated that Anthony had communicated with his counsel and had decided to plead guilty and seek the mercy of the court. His testimony at sentencing demonstrated his ability to testify

favorably and exhibit appropriate courtroom behavior. Although he failed to initially provide his thumbprint on the judgment, he became compliant when asked to do so in open court.

**4.** The trial court also appointed counsel to represent Anthony on appeal.