

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-23-00184-CR

JASON ALLEN MASSEY, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 102nd District Court
Bowie County, Texas
Trial Court No. 22F0028-102

Before Stevens, C.J., van Cleef and Rambin, JJ.
Memorandum Opinion by Justice van Cleef

MEMORANDUM OPINION

A Bowie County jury convicted Jason Allen Massey of possessing one gram or more but less than four grams of methamphetamine. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.115(c) (Supp.). After Massey pled true to the State's habitual-offender punishment allegations, the jury assessed a sentence of life imprisonment and imposed a $10,000.00 fine. *See* TEX. PENAL CODE ANN. § 12.42(d). On appeal, Massey argues (1) that the evidence was legally insufficient to support the jury's finding that reasonable suspicion justified the traffic stop resulting in the discovery of methamphetamine, (2) that his counsel rendered ineffective assistance by failing to investigate alleged juror misconduct, (3) that the trial court abused its discretion by failing to declare a mistrial due to the alleged misconduct, and (4) that the $10,000.00 fine was improperly assessed.

We find that the jury properly considered the evidence obtained during the traffic stop after finding that the stop was based on reasonable suspicion. We also conclude that the silent record fails to support Massey's claim of ineffective assistance of counsel and that the trial court did not abuse its discretion by overruling Massey's motion for mistrial. However, we sustain Massey's final point of error and determine that the judgment must be modified by deleting the $10,000.00 fine. As modified, we affirm the trial court's judgment.

## I. The Jury Properly Considered the Evidence Obtained Through the Traffic Stop

Massey's first argument complains of the sufficiency of the evidence supporting the jury's finding that the traffic stop was legal. "[S]ufficiency and admissibility are distinct issues." *Hanks v. State*, 137 S.W.3d 668, 671 (Tex. Crim. App. 2004). A sufficiency review "is

appropriate only as to the sufficiency of the state's proof as to the elements of the offense." *Id.* at 672; *see Goodwin v. State*, 416 S.W.3d 90, 94 (Tex. App.—Beaumont 2013, no pet.); *see also Price v. State*, No. 06-11-00120-CR, 2012 WL 112534, at *1 (Tex. App.—Texarkana Jan. 12, 2012, no pet.) (mem. op., not designated for publication). As a result, we do not conduct a sufficiency review on the legality of a seizure when the issue is submitted to a jury. *Goodwin*, 416 S.W.3d at 94 (citing *Hanks*, 137 S.W.3d 671–72). Nevertheless, to the extent Massey's brief can be read to raise a proper challenge to the jury's consideration of the evidence obtained by the traffic stop, we will review it.

## A. Relevant Caselaw and Standard of Review

"The United States and Texas Constitutions both guarantee the right to be secure from unreasonable searches and seizures." *Peucker v. State*, 489 S.W.3d 592, 601 (Tex. App.—Texarkana 2016, pet. ref'd) (citing U.S. CONST. amend. IV; TEX. CONST. art. I, § 9). "In addition to the Constitutional constraints, the Texas Code of Criminal Procedure forbids any evidence obtained by an unreasonable search to be admitted against an accused." *Id.* (citing TEX. CODE CRIM. PROC. ANN. art. 38.23(a)). Article 38.23 states,

> In any case where the legal evidence raises an issue hereunder, the jury shall be instructed that if it believes, or has a reasonable doubt, that the evidence was obtained in violation of the provisions of [the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America], then and in such event, the jury shall disregard any such evidence so obtained.

TEX. CODE CRIM. PROC. ANN. art. 38.23(a).

"When a police officer stops a defendant without a warrant, the State has the burden of proving the reasonableness of the stop . . . ." *State v. Cortez*, 543 S.W.3d 198, 204 (Tex. Crim.

3

App. 2018). "If an officer has a *reasonable basis* for suspecting that a person has committed a traffic offense, the officer may legally initiate a traffic stop." *Zervos v. State*, 15 S.W.3d 146, 151 (Tex. App.—Texarkana 2000, pet. ref'd). "The standard requires only 'some minimal level of objective justification' for the stop." *Hamal v. State*, 390 S.W.3d 302, 306 (Tex. Crim. App. 2012) (quoting *Foster v. State*, 326 S.W.3d 609, 614 (Tex. Crim. App. 2010)). "Reasonable suspicion exists if the officer has 'specific articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably suspect that a particular person has engaged or is (or soon will be) engag[ed] in criminal activity.'" *Jaganathan v. State*, 479 S.W.3d 244, 247 (Tex. Crim. App. 2015) (quoting *Abney v. State*, 394 S.W.3d 542, 548 (Tex. Crim. App. 2013)).

When there is a disputed issue of fact "material to [a] claim of a constitutional or statutory violation," the trial court submits the matter to the jury under Article 38.23(a). *Madden v. State*, 242 S.W.3d 504, 510 (Tex. Crim. App. 2007). The jury must then find that the State met its burden to prove beyond a reasonable doubt the legality of the defendant's stop. *See Oursbourn v. State*, 259 S.W.3d 159, 180 (Tex. Crim. App. 2008); *Cadoree v. State*, 331 S.W.3d 514, 521 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd). "We review a reasonable suspicion determination by considering the totality of the circumstances." *Cortez*, 543 S.W.3d at 204 (citing *Garcia v. State*, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001)). In our review, we keep in mind that a jury is entitled to believe an arresting officer's version of events. *See Garza v. State*, 261 S.W.3d 361, 370 (Tex. App.—Austin 2008, pet. ref'd).

### B.   Factual Background

Micah Miller, an officer with the Texarkana, Texas Police Department, testified that he conducted a traffic stop of a vehicle driven by Massey because he (1) twice failed "to signal a hundred feet prior to his turn,"[1] (2) "turned into the middle lane" instead of staying in "the closest lane available," (3) and "stopped over the designated stop point," "cutting the entire crosswalk off" at an intersection. When asked how he knew that Massey's vehicle failed to turn within 100 feet of an intersection, Miller testified, "I just do a reasonable estimation."

Miller testified that, while explaining the reason for the traffic stop, he noticed a zip lock bag in Massey's lap with a crystalized substance that appeared to be methamphetamine. After Officer Daniel Linn testified about the chain of custody, he informed the jury that laboratory testing confirmed that the substance was 1.74 grams of methamphetamine.

Miller's stop of Massey's vehicle was caught on Miller's dash camera and played for the jury. It showed that the stop was conducted at night and that, as a result, the question of whether Massey failed to signal 100 feet before his turn was not clearly resolved by the recording. To contradict Miller's account, Massey offered the testimony of Clyde Lee, who testified that he took photographs of the 100-foot mark in front of each intersection. After displaying those photographs, Lee opined that Miller did not have reasonable suspicion to stop Massey.[2] Even so,

---

[1]"An operator intending to turn a vehicle right or left shall signal continuously for not less than the last 100 feet of movement of the vehicle before the turn." TEX. TRANSP. CODE ANN. § 545.104(b).

[2]As shown by the following excerpt, Lee's testimony showed why there was a fact issue as to the 100-foot mark:

> Q.    [(By Massey's Counsel)] And so based on your observation of the evidence in this case, the video, by the time the officer gets there is Jason Massey past the point of one hundred feet?

5

when asked whether he agreed that "nobody knows other than the officer who testified in this court as to what he observed," Lee responded, "That's always the case when it's a personal observation, yes."

### C.  Analysis

Although Massey complains of Miller's conclusion that Massey failed to signal continuously for at least 100 feet before his turn, he failed to address Miller's remaining reasons for the stop on appeal, including that Massey turned into the middle lane when making a left turn. The recording showed that, when Massey made a left turn into a middle lane, he was traveling on a one-way street. The Texas Transportation Code states,

> To turn left, an operator who is approaching an intersection having a roadway designated for one-way traffic and for which signs are posted from a roadway designated for one-way traffic and for which signs are posted shall make the turn as closely as practicable to the left-hand curb or edge of the roadway.

TEX. TRANSP. CODE ANN. § 545.101(d).

In light of Miller's testimony and the recording, which showed a violation of Section 545.101(d), the jury was free to find that the traffic stop was lawfully conducted. Consequently, we find proper the jury's decision to consider evidence obtained by the traffic stop. *See* TEX. CODE CRIM. PROC. ANN. art. 38.23(a). As a result, we overrule Massey's first point of error.

---

A.      ([By Lee)] It's hard to tell. But the car is still moving and his blinker is on, so I don't know if he is right past it or if he is right at it.

Q.      Okay. So, in your mind, is there reasonable doubt as to whether or not he had his blinker on before one hundred feet?

A.      There's some reasonable doubt, but there's no way for you to tell from where the officer was.

6

## II. The Silent Record Fails to Show Ineffective Assistance

In his second point of error, Massey argues that his trial counsel rendered ineffective assistance by failing to determine whether a juror's husband, who had previously served as a confidential informant, had provided information against Massey in the past. Based on the silent record before us, we cannot conclude that counsel rendered ineffective assistance.

### A. Factual Background

After the verdict on guilt/innocence was read, the trial court learned that a juror had a conversation with Linn, which the State argued was a violation of the trial court's instructions to the jury. As a result, the State argued that the juror should be excused and replaced by the alternate juror. The trial court held a hearing on the matter.

At the hearing, Linn testified,

> [J]uror number three, she spoke to me, thought she knew who I was. She referred to a family member of hers that was a former informant of mine and we came to the conclusion that she knew who I was and I knew who she was talking about. And I told her I hoped, you know, that he was doing good and we went our separate ways.

Linn testified that he did not know the juror but said that her husband served as a confidential informant after being charged two years ago with possession of drugs.

The juror admitted that the conversation occurred during a lunch recess but stated that her husband was not a confidential informant at the time the conversation occurred. The juror swore she had not mentioned Linn or any part of her conversation with him to the other panelists. After hearing her testimony, Massey moved for a mistrial, but the State argued that it had sequestered the juror since the lunch recess and that any misconduct was immaterial. As a result, the trial

7

court denied the motion for mistrial. Even so, it replaced the juror with an alternate juror during the punishment phase of the trial.

## B. Standard of Review for Ineffective Assistance

As many cases have noted, the right to counsel does not mean the right to errorless counsel. *Robertson v. State*, 187 S.W.3d 475, 483 (Tex. Crim. App. 2006). "[T]o prevail on a claim of ineffective assistance of counsel, [the defendant] must satisfy the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, [687–88] . . . (1984)." *Ex parte Imoudu*, 284 S.W.3d 866, 869 (Tex. Crim. App. 2009) (orig. proceeding). A failure to make a showing under either prong of the *Strickland* test defeats a claim for ineffective assistance. *Rylander v. State*, 101 S.W.3d 107, 110–11 (Tex. Crim. App. 2003).

To prove ineffective assistance of his counsel, Massey must show (1) that trial counsel's representation fell below an objective standard of reasonableness, based on prevailing professional norms, and (2) that there is a reasonable probability that the result of the proceeding would have been different but for trial counsel's deficient performance. *See Strickland*, 466 U.S. at 687–95; *Hernandez v. State*, 726 S.W.2d 53, 55–57 (Tex. Crim. App. 1986). A "reasonable probability" means a "probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

## C. Analysis

On appeal, Massey's entire argument in support of his ineffective assistance claim is as follows:

> It is unclear from the record whether the confidential informant had ever identified Massey as a person known to frequent that neighborhood for drugs.

8

When the mistrial was not granted, Counsel for Massey should have requested additional information regarding the activities of the confidential informant to verify that the confidential informant had never identified Massey.

Appellate courts "look to the totality of the representation" in evaluating the effectiveness of counsel. *Auld v. State*, 652 S.W.3d 95, 113 (Tex. App.—Texarkana 2022, no pet.); *see Ex parte Felton*, 815 S.W.2d 733, 735 (Tex. Crim. App. 1991) (orig. proceeding). Although it is possible that a single egregious error by counsel can constitute ineffective assistance, Texas courts have "been hesitant to 'designate any error as per se ineffective assistance of counsel as a matter of law.'" *Ex parte Harrington*, 310 S.W.3d 452, 459 (Tex. Crim. App. 2010) (orig. proceeding) (quoting *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999)). As the Texas Court of Criminal Appeals has emphasized,

An appellate court should be especially hesitant to declare counsel ineffective based upon a single alleged miscalculation during what amounts to otherwise satisfactory representation, especially when the record provides no discernible explanation of the motivation behind counsel's actions—whether those actions were of strategic design or the result of negligent conduct.

*Thompson v. State*, 9 S.W.3d 808, 814 (Tex. Crim. App. 1999). Ordinarily, counsel should have "an opportunity to explain his actions before being denounced as ineffective." *Rylander*, 101 S.W.3d at 111.

Massey's claim is based on a single omission—his counsel's failure to question the juror about whether her husband had obtained information about Massey while serving as a confidential informant. Here, because the appellate record is silent, it is possible that counsel had conducted the inquiry at some point and learned that the juror had no information to contribute. It is also possible that counsel chose not to conduct the inquiry because he had no

9

information suggesting that the juror knew of Massey prior to trial or because Massey told him he did not know the juror or her husband.

On the silent record before us, we find that Massey cannot show that his counsel rendered ineffective assistance. As a result, he cannot meet the first *Strickland* prong. Further, because there is no suggestion that the juror based her decision of Massey's guilt on any information other than the evidence presented at trial, Massey cannot show that there was a reasonable probability that the outcome of the guilt/innocence proceeding would have been different had counsel conducted the inquiry. Accordingly, we overrule Massey's second point of error.

## III. The Trial Court Did Not Abuse Its Discretion by Denying a Mistrial

Massey moved for a mistrial based on juror misconduct. In his third point of error, he argues that the trial court erred by denying the motion. We disagree.

We review the trial court's denial of a motion for mistrial for abuse of discretion. *Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004). A mistrial is an extreme remedy, to be sparingly used "for a narrow class of highly prejudicial and incurable errors" committed during the trial process. *Turner v. State*, 570 S.W.3d 250, 268 (Tex. Crim. App. 2018). When the trial court conducts a hearing on purported jury misconduct, the trial court is the sole judge of the credibility of the testifying jurors. *Thomas v. State*, 699 S.W.2d 845, 854 (Tex. Crim. App. 1985), *abrogated on other grounds by Najar v. State*, 618 S.W.3d 366, 371–72 (Tex. Crim. App. 2021).

"To warrant the granting of a new trial based on juror misconduct . . . , an appellant must demonstrate (1) that misconduct occurred, (2) that such misconduct was material, and (3) that

10

such misconduct probably caused injury." *Bogue v. State*, 204 S.W.3d 828, 829 (Tex. App.—Texarkana 2006, pet. ref'd). Here, because the juror conversed with Linn in dereliction of the trial court's instructions, we find that juror misconduct occurred and will focus on the remaining two elements instead. *See* TEX. CODE CRIM. PROC. ANN. art. 36.22.

As for materiality, "[t]he appellant has the burden of proving that any improper conversations occurring between a juror and another party touched on a matter concerning the case at trial." *Bogue*, 204 S.W.3d at 829 (citing *Marquez v. State*, 620 S.W.2d 131 (Tex. Crim. App. [Panel Op.] 1981)). Here, Massey's briefing does not establish how the conversation was material. Given the testimony at the hearing, the trial court was free to find that the juror's conversation with Linn was innocuous, had nothing to do with the facts of the case, and did not indicate any bias or prejudice toward Massey.[3] As a result, we cannot say that the trial court abused its discretion by impliedly finding that the juror's conversation with Linn was immaterial.

As for the last part of the analysis, "[w]hen a juror converses with an unauthorized person about the case, 'injury to the accused is presumed' and a new trial may be warranted." *Quinn v. State*, 958 S.W.2d 395, 401 (Tex. Crim. App. 1997) (quoting *Robinson v. State*, 851 S.W.2d 216, 230 (Tex. Crim. App. 1991)). Even so, "the State may rebut this presumption of harm." *Id.* "In determining whether the State rebutted the presumption of harm, appellate courts should defer to the trial court's resolution of the historical facts and its determinations concerning credibility and demeanor." *Id.*; *see Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).

---

[3]Additionally, Massey does not argue that the juror withheld any information during voir dire. *See Barnett v. State*, 420 S.W.3d 188, 191–92 (Tex. App.—Amarillo 2013, no pet.).

11

Massey argues that he was harmed because "there is the possibility that [the juror's] husband provided information that could have led to the increased law enforcement presence and potentially even the stop in question," but this argument is based in conjecture and is not supported by the record. Nothing shows that the juror or her husband even knew of Massey before the trial. Also, the trial court could have believed the juror's testimony that she did not mention her conversation to the other panelists. *See Quinn*, 958 S.W.3d at 402. On the facts before us, the trial court could have concluded that no juror was subject to outside influence as a result of the conversation and that the verdict of guilt was decided based on the evidence in accordance with the trial court's proper jury instructions. *See Bogue*, 204 S.W.3d at 830.

Giving the appropriate deference to the trial court, we find no abuse of discretion in the trial court's conclusion that the extreme remedy of a mistrial was not required. *See id.*; *Quinn*, 958 S.W.3d at 402. As a result, we overrule Massey's third point of error.

## IV. The Fine Must Be Deleted from the Judgment

In his last point of error, Massey argues that the trial court's fine was improperly assessed. Because we agree, we sustain this point of error.

"This Court has the power to correct and modify the judgment of the trial court for accuracy when the necessary data and information are part of the record." *Anthony v. State*, 531 S.W.3d 739, 743 (Tex. App.—Texarkana 2016, no pet.) (citing TEX. R. APP. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27 (Tex. Crim. App. 1993); *Asberry v. State*, 813 S.W.2d 526, 529 (Tex. App.—Dallas 1991, pet. ref'd)).

As a result of his pleas of guilt to the State's habitual-offender punishment-enhancement allegations, Massey's range of punishment was set by Section 12.42(d) of the Texas Penal Code. *See* TEX. PENAL CODE ANN. § 12.42(d). "This section does not contain provisions allowing imposition of the $10,000.00 fine assessed in this case." *Dolph v. State*, 440 S.W.3d 898, 908 (Tex. App.—Texarkana 2013, pet. ref'd); *see Harris v. State*, 903 S.W.2d 514, 515 (Tex. App.—Texarkana 1995, no pet.) ("[T]here is no statutory provision for a fine as habitual offender."). The State concedes that the fine must be removed. As a result, we modify the judgment by deleting the $10,000.00 fine.

## V.     Conclusion

We modify the trial court's judgment by deleting the $10,000.00 fine. As modified, we affirm the trial court's judgment.

Charles van Cleef
Justice

Date Submitted:     February 23, 2024
Date Decided:       March 11, 2024

Do Not Publish

13