

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-23-00243-CR

DEXTER CHALMERS, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 76th District Court
Camp County, Texas
Trial Court No. CF-22-02978

Before Stevens, C.J., van Cleef and Rambin, JJ.
Memorandum Opinion by Justice Rambin

MEMORANDUM OPINION

After Dexter Chalmers assaulted Melvin Champion with an iron pipe, spray-painted Champion, and stole Champion's bicycle and other items, a Camp County jury acquitted Chalmers of aggravated robbery,[1] convicted him of the lesser-included offense of robbery,[2] and assessed him a sentence of thirty-two years' imprisonment. The trial court entered its judgment of conviction in accordance with the jury's verdict. On appeal, Chalmers challenges the sufficiency of the evidence supporting his robbery conviction and asserts that the trial court erred in admitting portions of Champion's recorded statement as a prior consistent statement.

We find the evidence legally sufficient to support the jury's verdict of guilt. We also find no abuse of discretion in the trial court's evidentiary ruling admitting portions of Champion's statement. We will modify the bill of costs by deleting court-appointed attorney fees and affirm the judgment.

## I.  Sufficient Evidence Supported Chalmers's Robbery Conviction

### A.  Standard of Review

"In evaluating legal sufficiency, we review all the evidence in the light most favorable to the trial court's judgment to determine whether any rational jury could have found the essential elements of the offense beyond a reasonable doubt." *Williamson v. State*, 589 S.W.3d 292, 297 (Tex. App.—Texarkana 2019, pet. ref'd) (citing *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010)). "Our rigorous [legal sufficiency] review focuses on the quality of the

---

[1]*See* TEX. PENAL CODE ANN. § 29.03.

[2]*See* TEX. PENAL CODE ANN. § 29.02(a)(2).

evidence presented." *Id.* (citing *Brooks*, 323 S.W.3d at 917–18 (Cochran, J., concurring)). "We examine legal sufficiency under the direction of the *Brooks* opinion, while giving deference to the responsibility of the jury 'to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'" *Id.* (quoting *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007)).

"In our review, we consider 'events occurring before, during and after the commission of the offense and may rely on actions of the defendant which show an understanding and common design to do the prohibited act.'" *Id.* (quoting *Hooper*, 214 S.W.3d at 13). "It is not required that each fact 'point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction.'" *Id.* (quoting *Hooper*, 214 S.W.3d at 13). "Circumstantial evidence and direct evidence are equally probative in establishing the guilt of a defendant, and guilt can be established by circumstantial evidence alone." *Id.* (citing *Ramsey v. State*, 473 S.W.3d 805, 809 (Tex. Crim. App. 2015); *Hooper*, 214 S.W.3d at 13). "Further, 'we must consider all of the evidence admitted at trial, even if that evidence was improperly admitted.'" *Id.* (quoting *Fowler v. State*, 517 S.W.3d 167, 176 (Tex. App.—Texarkana 2017), *rev'd in part by* 544 S.W.3d 844 (Tex. Crim. App. 2018)).

The jury, as "the sole judge of the credibility of the witnesses and the weight to be given their testimony[, could] 'believe all of [the] witnesses' testimony, portions of it, or none of it.'" *Id.* (second alteration in original) (quoting *Thomas v. State*, 444 S.W.3d 4, 10 (Tex. Crim. App. 2014)). "We give 'almost complete deference to a jury's decision when that decision is based

3

upon an evaluation of credibility.'" *Id.* (quoting *Lancon v. State*, 253 S.W.3d 699, 705 (Tex. Crim. App. 2008)).

"Legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge." *Id.* at 298 (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). "The 'hypothetically correct' jury charge is 'one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried.'" *Id.* (quoting *Malik*, 953 S.W.2d at 240).

### B. The Evidence at Trial

The evidence at trial showed that Champion, who was described as "severe[ly] slow" and as having "some mental-capacity issues," was assaulted by Chalmers and that Chalmers robbed him of his red bicycle, flip-phone, and safety vest. In the assault, Chalmers struck Champion on his back and side with an iron pipe; sprayed blue paint on his beard, hat, front and back torso, arms, and pants; sprayed a "T" on his chest and an "R" and a "V" on his back; and pushed him down. The blow from the iron pipe left a large bruise on the right side of Champion's back.[3]

Champion testified that it hurt when he was struck with the iron pipe and that he was "scared a little bit" when Chalmers hit him and pushed him down. He also testified that he was

---

[3]The jury acquitted Chalmers of aggravated robbery. A pipe is not a deadly weapon per se. *Compare* Tex. Penal Code Ann. § 1.07(a)(17)(A) (Supp.), *with* § 1.07(a)(17)(B) (Supp.); *see Hill v. State*, 913 S.W.2d 581, 582–83 (Tex. Crim. App. 1996). Therefore, on this record and consistent with the verdict, the jury could have found that Chalmers used the pipe to cause injury but did not use it in a way that made it a deadly weapon or in a way that caused "serious bodily injury" within the meaning of Sections 29.03 and/or 1.07 of the Texas Penal Code. *See* Tex. Penal Code Ann. §§ 29.03(a)(1)–(2); 1.07(a)(17)(B), § 1.07(a)(46) (Supp.) ("creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ").

"scared" of Chalmers and that, after he got up, he ran. Afterward, Tara Butler saw Champion walking through an empty lot without his shirt and wobbling. Concerned that something was wrong, Butler followed him down the street in her truck, and when she found out what had happened, she called 9-1-1 and Champion's caregiver.

Based on information provided by witnesses, officers with the Pittsburg Police Department located Chalmers in a vacant house on the same street. In the backyard of the house, they found a red Murray bicycle that was almost totally spray-painted blue, and there was blue paint overspray on the grass. They found Chalmers hiding in a closet inside the house and arrested him for aggravated robbery.

In a recorded statement at the time of his arrest, Chalmers claimed that Champion had assaulted his sister and that he kept Champion's flip phone to record his confession. Although Chalmers told law enforcement that Champion's phone was in the house in a pair of camouflage pants, the officers did not locate the phone. Chalmers also claimed that Champion spray painted the bicycle in the woods and left it there but admitted that he pushed the bicycle to the house. Chalmers also claimed that Champion had spray painted himself.

### C. Analysis

Under the statute and the trial court's charge, in order to convict Chalmers of robbery, the State had to show, beyond a reasonable doubt, that Chalmers, (1) in the course of committing theft (2) and with intent to obtain or maintain control of the property, (3) intentionally or knowingly (4) threatened or placed (5) Champion (6) in fear of imminent bodily injury or death.[4]

---

[4]A person may be convicted of robbery if he

5

In his first issue, Chalmers only challenges the sufficiency of the evidence showing that Champion was in fear of imminent bodily injury. Chalmers focuses on Champion's testimony that he was "scared a little bit" and contends that is not sufficient to show that Champion was in fear of bodily injury.

Although Champion testified that he was "scared a little bit" when Chalmers hit him and pushed him down, he also testified that it hurt when Chalmers hit him with the iron pipe. The evidence also showed that that blow left a significant bruise on Champion's side and back. Further, Champion testified that he was afraid of Chalmers and ran away when he got up from the ground.

Based on that evidence, a rational jury could reasonably infer that Chalmers's spraying paint all over Champion, striking him with an iron pipe, and pushing him down placed Champion in fear of imminent bodily injury.[5] As a result, we find that legally sufficient evidence supports the jury's findings and Chalmers's conviction. We overrule this issue.

---

(a)      . . . in the course of committing theft as defined in Chapter 31 and with intent to obtain or maintain control of the property, he:

(1)      intentionally, knowingly, or recklessly causes bodily injury to another; or

(2)      intentionally or knowingly threatens or places another in fear of imminent bodily injury or death.

TEX. PENAL CODE ANN. § 29.02. However, the jury was only charged under subsection (a)(2).

[5]*See* TEX. PENAL CODE ANN. § 1.07(a)(8) (Supp.) ("'Bodily injury' means physical pain, illness, or any impairment of physical condition.").

**II.      There Was No Abuse of Discretion in Admitting the Body-Camera Excerpt**

In his second issue, Chalmers complains that the trial court erred in admitting, as a prior consistent statement, portions of Champion's recorded statement given to officers at the scene.

At trial, Chalmers cross-examined Champion over whether, in general, there were "people in [his] life that [told him] what to say or [tried] to help [him] remember things and [told him] how it happened[.]" Once Champion agreed to that general proposition, he was cross-examined over whether his testimony on the stand was based on his memory of what happened or on what people had told him about what happened. Champion admitted that "[t]hey told [him] some of it." Champion was then cross-examined specifically about the pipe and whether that was from Champion's own memory or from something someone had told him. Champion testified that it was from his memory and that he had told an officer on the scene that Chalmers had used a pipe.

One of the responding officers, Eric Shaw, testified after Champion. As part of Shaw's testimony, the trial court admitted, over Chalmers's objection, excerpts from Shaw's body-camera footage, showing statements by Champion. The State offered those excerpts as a "prior consistent statement" to rebut the assertion that Champion "talked to people and they[] [had] told [him] what to say."

The designated portions of the recording show Champion as Shaw asked Champion where on his body he had been hit by a pipe. Champion responded non-verbally by turning his back to directly face the camera, as another officer pointed to bruising on Champion's back.

Shaw went on to testify that, by the time he arrived on the scene, Champion had already told neighborhood residents that Chalmers had hit him with a pipe and that Shaw first heard about the pipe from the neighbors.

On appeal, Chalmers argues that the recorded statement was not admissible under Rule 801 of the Texas Rules of Evidence because Champion's recorded statement was made after others had an opportunity to tell Champion what to say. *See* TEX. R. EVID. 801(e)(1)(B) (providing that a prior consistent statement of a testifying witness subject to cross-examination is not hearsay if it "is consistent with the declarant's testimony and is offered to rebut an express or implied charge that the declarant . . . acted from a recent improper influence").

However, Chalmers did not cite Rule 801 of the Texas Rules of Evidence during the trial. Instead, he objected on grounds of Rule 613 because "[t]hey've got to follow those instructions." *See* TEX. R. EVID. 613 (providing specific steps for impeachment of a witness with his prior inconsistent statement or for bias or interest). The State countered that Chalmers was "looking at the impeachment rule" when the State was offering a prior consistent statement in response to an allegation of "fabrication" that Champion had "talked to people and they[] [had] told [him] what to say." Chalmers then objected because Champion "was on the stand, and that[] [was] the best evidence," and because Champion "was on the stand to be cross-examined."

A "point of error on appeal must comport with the objection made at trial." *Wilson v. State*, 71 S.W.3d 346, 349 (Tex. Crim. App. 2002). As noted by the Texas Court of Criminal Appeals,

> Rule 33.1(a) of the Texas Rules of Appellate Procedure provides that a complaint is not preserved for appeal unless it was made to the trial court "by a timely

request, objection or motion" that "stated the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context."

*Resendez v. State*, 306 S.W.3d 308, 312 (Tex. Crim. App. 2009) (quoting TEX. R. APP. P. 33.1(a)(1)(A)). "The purpose of requiring a specific objection in the trial court is twofold: (1) to inform the trial judge of the basis of the objection and give him the opportunity to rule on it; [and] (2) to give opposing counsel the opportunity to respond to the complaint." *Id.*

As a result,

there are no technical considerations or forms of words required to preserve an error for appeal, a party must be specific enough so as to "let the trial judge know what he wants, why he thinks himself entitled to it, and do so clearly enough for the judge to understand him at a time when the trial court is in a proper position to do something about it."

*Id.* at 312–13 (quoting *Lankston v. State*, 827 S.W.2d 907, 909 (Tex. Crim. App. 1992)).

"Usually, for a complaint to be obvious without having been explicitly stated and still satisfy the purposes above, there have been statements or actions on the record that clearly indicate what the judge and opposing counsel understood the argument to be." *Clark v. State*, 365 S.W.3d 333, 339 (Tex. Crim. App. 2012).

Chalmers's objections at trial were imprecise. However, the context is developed enough under *Clark* to show that the twofold purposes set out by *Resendez* were satisfied.

We proceed, then, with appellate review of the trial court's decision to admit the evidence. "[A] trial court's determination that a prior consistent statement is admissible because the cross-examination suggested or implied an assertion of recent fabrication or improper motive

is reviewed only for an abuse of discretion." *Hammons v. State*, 239 S.W.3d 798, 806 (Tex. Crim. App. 2007).

The "predicate [for the admission of a prior consistent statement] is laid by the content, tone, and tenor of defense cross-examination." *Id.* at 808. The door to the admission of a prior-consistent statement is opened by "an express or implied suggestion that the witness is fabricating [his] testimony in some relevant respect." *Id.* In deciding whether the door has been opened, "the trial court must consider the totality of the cross-examination, not isolated portions or selected questions and answers." *Id.*

Here, the "content, tone, and tenor" of the cross-examination was sufficient for the trial court to conclude that the door was opened, i.e., that cross-examination had raised the question of whether Champion was fabricating his trial testimony against Chalmers, perhaps unwittingly, because Champion was susceptible to fabrication(s) planted in his mind by the improper influence of neighborhood residents. Likewise, the trial court acted within its discretion by concluding that the evidence offered fit through that open door. The body-camera recording does not directly answer the question raised by cross-examination because the officers arrived on the scene after the neighbors. Even so, the at-the-scene recording is relevant, because it is before any later access to Champion, such as in the weeks or days before trial. The body-camera recording also bears on what happened in the moments beforehand. The recording was taken so shortly after the events in question (Champion is still shirtless and spray painted) that the jury could assess whether Champion's demeanor at the scene was consistent with someone trying to

10

mislead Shaw into believing a recently planted false story or is consistent with someone confirming the truth of what happened by showing the bruise on Champion's back.

There was no abuse of discretion. We overrule this issue.

## III. The Bill of Costs Must Be Modified

"This Court has the power to correct and modify the judgment of the trial court for accuracy when the necessary data and information are part of the record." *Anthony v. State*, 531 S.W.3d 739, 743 (Tex. App.—Texarkana 2016, no pet.) (citing TEX. R. APP. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27 (Tex. Crim. App. 1993)). "We have the authority to modify the judgment to make the record speak the truth." *Minter v. State*, 570 S.W.3d 941, 944 (Tex. App.—Texarkana 2019, no pet.) (citing TEX. R. APP. P. 43.2(b); *French v. State*, 830 S.W.2d 607, 609 (Tex. Crim. App. 1992)).

In this case, the record also shows that the trial court found Chalmers indigent before trial and appointed him counsel. Because he was found indigent, he was presumed to remain indigent absent proof of a material change in his circumstances. *See* TEX. CODE CRIM. PROC. ANN. arts. 26.04(p), 26.05(g) (Supp.); *Walker v. State*, 557 S.W.3d 678, 689 (Tex. App.—Texarkana 2018, pet. ref'd). Nevertheless, and even though the trial court found that Chalmers was indigent when it rendered its judgment, the trial court's judgment includes an assessment for court-appointed attorney fees. Under "Court Costs," the written judgment states, "TO BE DETERMINED." The certified bill of costs includes a charge for "COURT APPOINTED ATTORNEY FEE" of $400.00.

11

Under Article 26.05(g) of the Texas Code of Criminal Procedure, a trial court has the authority to order the reimbursement of court-appointed attorney fees only if "the judge determines that a defendant has financial resources that enable the defendant to offset in part or in whole the costs of the legal services provided . . . , including any expenses and costs." TEX. CODE CRIM. PROC. ANN. art. 26.05(g). "[T]he defendant's financial resources and ability to pay are explicit critical elements in the trial court's determination of the propriety of ordering reimbursement of costs and fees" of legal services provided. *Armstrong v. State*, 340 S.W.3d 759, 765–66 (Tex. Crim. App. 2011) (alteration in original) (quoting *Mayer v. State*, 309 S.W.3d 552, 556 (Tex. Crim. App. 2010)). Further, "[c]ourt costs, as reflected in a certified bill of costs, need neither be orally pronounced nor incorporated by reference in the judgment to be effective." *Id.* at 766–67 (citing *Weir v. State*, 278 S.W.3d 364, 367 (Tex. Crim. App. 2009)).

We have reviewed the appellate record and conclude that nothing showed that Chalmers had the ability to pay attorney fees. We also note that the trial court found Chalmers indigent in its rendition and in a subsequent order appointing him appellate counsel. As a result, we modify the certified bill of costs by deleting the charge for "Court Appointed Attorney Fee."

**IV. Disposition**

We modify the certified bill of costs by deleting the charge for "Court Appointed Attorney Fee." We affirm the trial court's judgment.

Jeff Rambin
Justice

Date Submitted:      April 10, 2024
Date Decided:        May 24, 2024

Do Not Publish