

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-23-00244-CR
_____

RODRIGO MIGUEL CASTELAN, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 354th District Court
Hunt County, Texas
Trial Court No. 34308CR

Before Stevens, C.J., van Cleef and Rambin, JJ.
Memorandum Opinion by Chief Justice Stevens

MEMORANDUM OPINION

A Hunt County jury found Rodrigo Miguel Castelan guilty of aggravated sexual assault of a twelve-year-old child, a first-degree felony. *See* TEX. PENAL CODE ANN. § 22.021. The jury assessed a sentence of fifty-five years' imprisonment and a fine of $10,000.00. On appeal, Castelan argues that the evidence was insufficient to support the jury's verdict of guilt and that he received an excessive sentence. We find that the jury's verdict was supported by legally sufficient evidence and that Castelan failed to preserve his complaint about an excessive sentence. Even so, we find that the trial court's judgment must be modified to reflect that the jury found Castelan guilty of aggravated sexual assault instead of sexual assault. As modified, we affirm the trial court's judgment.

## I. Legally Sufficient Evidence Support's the Jury's Verdict of Guilt

### A. Standard of Review

"In evaluating legal sufficiency, we review all the evidence in the light most favorable to the trial court's judgment to determine whether any rational jury could have found the essential elements of the offense beyond a reasonable doubt." *Williamson v. State*, 589 S.W.3d 292, 297 (Tex. App.—Texarkana 2019, pet. ref'd) (citing *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (plurality op.); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Hartsfield v. State*, 305 S.W.3d 859, 863 (Tex. App.—Texarkana 2010, pet. ref'd)). "Our rigorous [legal sufficiency] review focuses on the quality of the evidence presented." *Id.* (citing *Brooks*, 323 S.W.3d at 917–18 (Cochran, J., concurring)). "We examine legal sufficiency under the direction of the *Brooks* opinion, while giving deference to the responsibility of the jury 'to fairly resolve

conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'" *Id.* (quoting *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007))).

"Legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge." *Id.* at 298 (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). "The 'hypothetically correct' jury charge is 'one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried.'" *Id.* (quoting *Malik*, 953 S.W.2d at 240).

A person commits aggravated sexual assault if he, with intent or knowledge, "causes the penetration of the . . . sexual organ of a child by any means" and "the victim is younger than 14 years of age." TEX. PENAL CODE ANN. § 22.021(a)(1)(B)(i), (2)(B). Here, the State's indictment alleged that Castelan intentionally or knowingly caused the penetration of Aleena's[1] sexual organ by his finger when Aleena was younger than fourteen.

## B.    The Evidence at Trial

Aleena was fourteen by the time of trial. She testified that, two years earlier, she was spending the night at Castelan's house while he was having a party. Aleena said that she was "half asleep" when she heard the door open, followed by Castelan's voice. Aleena testified that Castelan laid on her bed behind her, reached underneath her pajamas, and started touching her

---

[1]To protect the child's identity, we will use pseudonyms for her and her family. *See* TEX. R. APP. P. 9.10.

chest and private area with his hand. She clarified that Castelan's fingers went "inside" her "vagina area." According to Aleena, she feigned sleep, and when Castelan was finished, he "retrieved [his] hand and put [her] clothes back on and then walked out of the room." Aleena said that she was in shock and just continued to lay in bed. Aleena testified that, later in the night, Castelan came back into her room and penetrated her vagina with his penis, causing her great pain. After the act, Castelan put Aleena's clothes back on and left. This time, Aleena reached out to her mother.

Aleena's mother, Janeen, testified that, after midnight, she received a text message from Aleena asking to be picked up from Castelan's house. When Janeen asked Aleena if she was okay, Aleena responded, "No, I don't want to be here anymore. . . . Don't call or text [Castelan]. Just don't. . . . I've been assaulted. . . . I want to go home." According to Janeen, Aleena said she "was touched in [her] sleep" by Castelan, that it hurt, and that she could still feel the pain from the assault. Janeen immediately went with her sister, Sally Naman, to pick the child up from Castelan's house.

Janeen testified that there was a party at Castelan's house but that, as soon as she texted Aleena to let her know she was there, "[Aleena] came out, running - - walking really fast towards [her], crying, confused. Her face had tears and fear and anger all at the same time." Naman testified that she could tell that something was wrong with Aleena, who appeared to be scared, in shock, and wanted to get out of Castelan's home as soon as possible. After speaking to Aleena, Janeen and Naman took her to the police station.

4

Gerrell Crawford, an officer with the Caddo Mills Police Department (CMPD), testified that he met with Janeen, Naman, and Aleena at 2:00 a.m. Crawford described Janeen as "more in shock and angry." On hearing the allegation against Castelan, Crawford and Roger Cole, a detective with the CMPD, arrived with Aleena at a hospital so she could meet with a sexual assault nurse examiner (SANE).

Jennifer Knight, the SANE, testified that she first obtained Aleena's account of the incident. According to Knight, Aleena said that she was asleep when she was assaulted by Castelan, who touched her on the chest and "touched her private point with his fingers and his private point." Knight said Aleena clarified that Castelan had touched her vagina with his fingers and penis and that, even though she was feigning sleep, she had opened her eyes during the assault to identify Castelan as the perpetrator. Aleena told Knight that Castelan stopped on his own and that she texted her mom to report the incident. Knight testified that, during the examination, she was "very surprised" to find the extent of Aleena's injuries, including lacerations to her vagina, bruising, and "swelling [that] went all the way down in her perineum." Knight testified, "[T]o be honest, initially because the swelling was so bad, I had difficulty determining what body part of the vagina that was and where the swelling extended to, down into her anus." Photos of the injuries, which Knight said were consistent with Aleena's account of the assault, were shown to the jury.

After the examination, Aleena was taken to the Hunt County Children's Advocacy Center (CAC), where she spoke with its program director, Jessica Francis. According to Francis, Aleena made an outcry of sexual abuse that occurred at Castelan's house during a party. After

5

the CAC interview, Cole collected the SANE kit from Knight's examination, secured buccal swabs from Castelan, and submitted the evidence to the Texas Department of Public Safety Crime Laboratory.

Cassandra Canela, a manager at the crime lab, testified that "[t]he vulva swabs from the victim were sent forward for YSTR testing." Canela explained that YSTR testing is a "male specific" test that deletes out the female DNA profile. Canela presented the following results of her scientific testing:

> A.    For the vulva swab, the partial YSTR profile is interpreted as originating from a single individual. [Castelan] cannot be excluded as a contributor of the male DNA profile at the following locus, DYS456.
>
> At this locus, the selected profile is found in 4,314 of the 16,000,388 total individuals within the database. In addition, any paternally related male relatives of the suspect cannot be excluded as the contributor of this male DNA profile.

After hearing all of the evidence, the jury convicted Castelan of aggravated sexual assault of Aleena.

C.    **Analysis**

Castelan argues that the evidence is legally insufficient because there could have been other possible suspects from the party. He also suggests that Aleena could have been asleep and was confused about Castelan being the perpetrator or made up the incident entirely. Those arguments fail to view the evidence in the light most favorable to the jury's verdict.

Aleena testified that Castelan came into her room during the party and touched the inside of her vaginal area with his finger, underneath her clothing. After that touching, Castelan left Aleena's room but returned to sexually assault her again by penetrating her vagina with his

6

penis. From Aleena's testimony, the jury could find that Castelan's acts were intentional or knowing. "[T]he testimony of a child victim alone is sufficient to support a conviction for aggravated sexual assault," and here, we find Aleena's testimony sufficient to establish each element of the indicted offense. *Allen v. State*, 436 S.W.3d 815, 820 (Tex. App.—Texarkana 2014, pet. ref'd); *see* TEX. CODE CRIM. PROC. ANN. art. 38.07.

Also, Janeen testified about the text-message discussion with Aleena after the incident. The jury saw the text messages sent by Aleena stating that Castelan had sexually assaulted her. Both Janeen and Naman testified about Aleena's upset demeanor. Knight testified that Aleena told her Castelan touched her vagina with his fingers. Evidence from the SANE examination showed that Aleena suffered physical injuries to her vaginal area from the assault, and results of the scientific testing showed that Castelan could not be excluded as a contributor to the DNA from vaginal swabs obtained during Aleena's SANE examination.

We decline Castelan's invitation to sit as the thirteenth juror since we "cannot . . . make [our] own assessment of the evidence." *Arroyo v. State*, 559 S.W.3d 484, 487 (Tex. Crim. App. 2018). Instead, we conclude that, when viewed in the proper light, the evidence is legally sufficient to establish, beyond a reasonable doubt, each element of aggravated sexual assault. As a result, we overrule Castelan's first point of error.

## II.    Castelan Failed to Preserve His Complaint About an Excessive Sentence

"To preserve for appellate review a complaint that a sentence is grossly disproportionate, constituting cruel and unusual punishment, a defendant must present to the trial court a timely request, objection, or motion stating the specific grounds for the ruling desired." *Navarro v.*

*State*, 588 S.W.3d 689, 690 (Tex. App.—Texarkana 2019, no pet.) (quoting *Russell v. State*, 341 S.W.3d 526, 527 (Tex. App.—Fort Worth 2011, no pet.)); *see* TEX. R. APP. P. 33.1; *Rhoades v. State*, 934 S.W.2d 113, 120 (Tex. Crim. App. 1996); *Curry v. State*, 910 S.W.2d 490, 497 (Tex. Crim. App. 1995).

The record shows, and Castelan agrees, that he raised no complaint in the trial court regarding whether the punishment assessed was cruel or unusual. Even so, he argues in a conclusory manner that "emotion played far too great a role in the sentence," which he characterizes as excessive. Even assuming that Castelan is arguing something besides cruel and unusual punishment, we still find the matter unpreserved. This is because Castelan was required to raise the issue with the trial court and obtain a ruling but failed to do so.[2] *See* TEX. R. APP. P. 33.1(a)(2). As a result, we overrule Castelan's last point of error.

## III. The Trial Court's Judgment Must be Modified to Reflect the Correct Offense

While we have overruled Castelan's points of error, we note that the trial court's judgment states Castelan was convicted of sexual assault of a child, a second-degree felony, under Section 22.011 of the Texas Penal Code. *See* TEX. PENAL CODE ANN. § 22.011(a)(2) (Supp.). Yet, before voir dire, the State clarified that Castelan's offense was aggravated sexual assault of a child, a first-degree felony. *See* TEX. PENAL CODE ANN. § 22.021. As a result, the trial court charged the jury with deciding whether Castelan was guilty of aggravated sexual assault and, after receiving the verdict of guilt, the trial court instructed them to assess punishment within the first-degree range.

---

[2]Castelan filed a motion for new trial but did not raise any complaint about his sentence.

"This Court has the power to correct and modify the judgment of the trial court for accuracy when the necessary data and information are part of the record." *Anthony v. State*, 531 S.W.3d 739, 743 (Tex. App.—Texarkana 2016, no pet.) (citing TEX. R. APP. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27 (Tex. Crim. App. 1993); *Asberry v. State*, 813 S.W.2d 526, 529 (Tex. App.—Dallas 1991, pet. ref'd)). "The authority of an appellate court to reform incorrect judgments is not dependent upon the request of any party, nor does it turn on the question of whether a party has or has not objected in the trial court." *Id.* (quoting *Asberry*, 813 S.W.2d at 529–30).

Because the record reflects that the jury found Castelan guilty of aggravated sexual assault, instead of sexual assault, we must modify the trial court's judgment accordingly. We also modify the judgment to show the correct statute of offense for this first-degree felony.

## IV. Conclusion

We modify the trial court's judgment to reflect that Castelan was found guilty of aggravated sexual assault under Section 22.021 of the Texas Penal Code, a first-degree felony. As modified, we affirm the trial court's judgment.

Scott E. Stevens
Chief Justice

Date Submitted: August 16, 2024
Date Decided: September 4, 2024

Do Not Publish